HARRISON HOPPER *vs.* PETER LESLEY HOPPER, SALLIE A. DENNIS, and others.

*Sale for Partition—Duty of Trustee—Exceptions to Sale— Absence of One of the Trustees from the Sale.*

It is the duty of the trustees, under a decree for the sale of land, to offer the property in such a manner as to bring its fair market value, and to exercise the same judgment and prudence that a careful owner would exercise in the sale of his own property.

Whether it is advisable to sell the land by the acre, or in building lots, depends largely upon the location of the property, and the surrounding circumstances.

Where one of the tracts sold as an entirety, contained seventy-three building lots, poorly located, in a town where there was no large demand for building lots, and the best mode of offering the property was fully considered by the trustees, and both agreed that it was not advisable or feasible to sell it in building lots; and the proof, though conflicting, showed that the sale was fairly conducted; that there was a good attendance, including the leading business men of the town; that the bidding throughout was spirited, and that the property brought its market value—the Court will not sustain an exception to the sale on the ground that the property would have sold for more money, if the building lots had been offered separately or in blocks.

Where one of the trustees was not present, the mere fact that the sale was, in his absence, conducted by his co-trustee, is no ground in itself to justify the Court to set aside the sale.

Property was sold under a decree for partition to two joint purchasers, one of whom, (P. L. H.), was one of the heirs at law to the property, and was also the trustee of a lunatic brother who had an interest therein. On exception filed to the sale, it was HELD:

That the mere fact that P. L. H. was the trustee of a brother who, as well as himself, had an interest in the property, was no reason for setting aside a sale which was fairly made.

Hopper *vs.* Hopper.

APPEAL from the Circuit Court for Harford County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, PAGE, MCSHERRY, BOYD and BRISCOE, J., for the appellees, and submitted on brief for the appellant.

*Edward M. Allen, George L. Van Bibber,* and *Frederick C. Cook,* for the appellant.

*Stevenson A. Williams,* for the appellees.

ROBINSON, C. J., delivered the opinion of the Court.

The real estate of John A. Hopper, the decedent, not being susceptible of partition without loss and injury to the parties in interest, was sold at public auction, under a decree of the Circuit Court for Harford County, to Harrison Hopper for $13,700.

The purchaser having failed to comply with the terms of sale, the property was re-sold under order of the Court, and at the re-sale P. Lesley Hopper and Sally A. Dennis became the purchasers at and for the sum of $13,300.

The property was first offered for sale by the trustees in five parcels, as follows:

1. A farm containing seventy-two acres more or less.

2. A farm containing forty-nine and a half acres more or less.

3. A lot in Havre-de-Grace containing eleven acres.

4. A brick dwelling-house in Havre-de-Grace, with seven lots adjoining.

5. A tract known as the "Lime Kiln" property, situate within the limits of Havre-de-Grace, containing twenty building lots.

These several parcels were offered separately, the aggregate sales amounting to $13,200. The entire property was then offered as a whole, and sold to the above named persons for $13,300, being an advance of just one hundred dollars.

To the ratification of the sale thus made, sundry exceptions are filed by Harrison Hopper, the purchaser at the first sale, and one of the heirs-at-law in interest.

In the first place, it is said that the eleven acre tract contains seventy-three building lots, and the Lime Kiln tract twenty, and that these building lots ought to have been offered separately, or in blocks; and if the property had been so offered it would have sold for more money. A good deal of testimony was taken as to the best and most judicious mode of offering these properties, and in this, as in all other like cases, there is a wide difference of opinion; most, if not all, of the witnesses on the part of the exceptant seem to think these tracts would have brought more money if they had been offered in building lots, whilst the witnesses on the other side are of opinion that they sold for their fair market value, and brought more money than if offered in building lots, and for the reason that the demand for building lots in Havre-de-Grace is limited, and besides the tracts are not very desirable for building purposes.

It was the duty of the trustees, of course, to offer the property in such a manner as to bring its fair market value, and to exercise the same judgment and prudence that a careful owner would exercise in the sale of his own property. Whether it is advisable to sell land by the acre, or in building lots, depends largely upon the location of the property, and the surrounding circumstances. Near a large and growing city, it may be best to sell in building lots, whereas near an ordinary town or village, if so offered, there would be but few purchasers, unless at prices so low as would justify the purchase of the entire tract. One thing is clear, there is not a large demand for building lots

in Havre-de-Grace, and, besides, the eleven acre tract is low and flat and too far out of the built-up portion of the town to make it very desirable for building purposes. And so with the Lime Kiln tract, part of which lies in a hollow, with a stream of water running through it. After full consideration of all the testimony, it is very questionable whether any great number of these lots could have been sold for building purposes. A private owner might have realized more money by a sale in lots upon long credits, and by selling some at one time, and then another. But these trustees were selling the property under a decree of the Court, for the purpose of distributing the proceeds of sale among the heirs-at-law of the decedent, and they were obliged to sell according to the terms prescribed by the decree.

The best mode of offering the property was fully considered by the trustees, and they both agreed that it was not advisable or feasible to sell it in building lots. Mr. Williams, one of the trustees, has had a large experience in the sale of real estate both in and about Havre-de-Grace, and not only as trustee, but as owner. He is, in fact, part owner of several acres of land opposite the eleven acre tract, one lot of which, after a great effort, he sold as a building lot for twenty-five dollars. Now the eleven acre lot sold for $3,300, or about fifty dollars for each of the seventy-three building lots. And, besides all this, the exceptant, who claims a large interest in the property, made no objection whatever to the mode or manner in which these tracts were offered at the first sale, and at which he was the purchaser. And, although he was present, he made no objection, nor did he even request the trustees to offer the property in building lots. Having so large an interest, if he believed the property would sell better in lots, one might suppose that he would have at least advised or requested the trustees so to offer it. The proof shows the sale was fairly conducted; that there was a good attendance, including the leading business men of Havre-de-

Grace; that the bidding throughout was spirited, and the property brought its market value.

But then it is said that Mr. Marine, one of the trustees, was not present at the sale. This is true, but that was his fault. It was his duty to have been present, and if he refused to attend the sale, or was, from any cause, prevented from being present, the mere fact that the sale was in his absence conducted by his co-trustee is no ground in itself to justify the Court to set aside the sale.

The only remaining objection necessary to be considered is the fact that Peter Lesley Hopper, one of the joint purchasers, is the trustee of a lunatic brother, who has an interest in the property. It is well settled that trustees will not be allowed to purchase property from the *cestui que trust*, or even acquire rights therein which may bring their personal interests in conflict with the discharge of their official duties. Not that such transactions and dealings are absolutely void, but they are looked upon with disfavor by Courts of equity, and will not be upheld unless it clearly appears that they are free from all taint or suspicion of unfairness. All this we have said in *Pairo vs. Vickery*, 37 *Md.*, 484, and in other cases. In this case, however, the property was not purchased of a *cestui que trust*, nor was it purchased by a trustee at his own sale, as in the cases relied on by the appellant. It was sold under a decree for partition, and Peter Lesley Hopper, as one of the heirs-at-law, had a common interest in the sale. He had the right in common with all other persons to be a bidder, and he had, besides, a right to protect his own interest by making the property sell for its value. The mere fact that he was the trustee of a brother, and that such brother also had an interest in the property, is no reason for setting aside a sale which was fairly made.

The exceptions to the ratification of the sale were, we think, properly overruled, and the order appealed from will be affirmed.

*Order affirmed.*

(Decided 20th June, 1894.)