## TRUSTEES OF RIVERDALE PRESBYTERIAN CHURCH *v.* PAUL B. PUGH & COMPANY.

[No. 8, January Term, 1928.]

Decided February 21st, 1928.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Frank M. Stephen* and *S. Marvin Peach,* for the appellant.

*Richard C. Thompson,* with whom was *Frank H. Myers* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Paul B. Pugh & Company, a corporation of the State of New York, was in 1919 seised in fee simple of two lots of ground, designated as lots 17 and 18, block 34, in the town of Riverdale in Prince George's County, Maryland. On March 1st, 1920, Herman E. Burgess, treasurer of Prince George's County, alleging that state and county taxes thereon for the year 1919 were due and in arrear, sold those two lots at a tax sale to James H. Rimmer for $10.63. On December 4th, 1922, Rimmer, by a deed in which his wife joined, conveyed the property to the Trustees of the Riverdale Presbyterian Church of Riverdale, hereinafter referred to as the trustees, and on June 8th, 1926, Paul B. Pugh & Company brought an action in ejectment for the recovery of the two lots against the trustees. The defendants appeared and filed three pleas to the declaration, two intended as general issue pleas, and one as a "plea on equitable grounds." A demurrer to the last named plea was sustained, issue was joined upon the general issue plea, and the case tried upon that issue before the court, without the aid of a jury, and at its conclusion the court returned the following verdict: "Verdict for the plaintiff for the property described in the declaration," and "verdict in favor of the defendant and against the plaintiff for the sum of ($564.60) five hundred and sixty-four and 60/100 dollars, for taxes and increased valuation of property in the declaration due to improvements made by defendant; same to be a first lien against the property." From the judgment on that verdict the defendant appealed.

It was conceded at the trial that, except in so far as it was affected by the tax sale proceeding and the conveyances based upon it, the plaintiff's title was good and he was entitled to recover, so that the real issue in the case was whether the tax sale to Rimmer was valid. At the conclusion of the whole case the plaintiff offered one prayer which was granted, and the defendant two, of which one was granted and one refused. Those rulings are the subject of the only exception submitted by the record.

Appellant conceded in this court that it was not injured by the action of the trial court in sustaining a demurrer to its plea for defense on equitable grounds, so that the only question presented by the appeal is the propriety of the court's rulings on these prayers.

In dealing with those rulings we are embarrassed by the fact that the evidence referred to in the prayers is not properly a part of the record, inasmuch as it forms no part of the bill of exceptions, and is not authenticated or certified by the judge who tried the case, and cannot therefore be considered by this court. *Modern Woodmen v. Cecil,* 108 Md. 366. The only bill of exceptions found in the record contains literally no evidence, although there is in the record what appears to be a transcript of the testimony of certain witnesses, and also what appear to be copies of certain deeds, abstracts from records, and other papers, but they form no part of the bill of exceptions, and are not authenticated in any way. Counsel for the appellee expressed orally, at the argument in this court, a willingness to have this court consider that transcript and those copies in dealing with the exception, but manifestly we could not do that. This court is essentially a court of appellate and not of original jurisdiction; and in cases such as this its only function is to review the rulings of the lower court, made in connection with the pleadings and the evidence before it, and not to try the case *de novo.* The law provides a definite and orderly method for bringing to the attention of this court the evidence adduced at the trial of a law case

(Code, art. 5, pars. 12, 13), and it cannot accept as a substitute therefor an oral agreement of counsel made in this court, after the transcript has been filed in it. There are several reasons for that. One is that the case, as presented by agreement of counsel in this court, might be different from that heard below, and this court would in consequence, in deciding it, exercise original and not appellate jurisdiction. Another is that it would be unfair to the trial judge for this court, in reviewing his rulings, to act upon evidence which might be different from that adduced before him when he ruled. Another is that such a practice would inevitably lead to disorder and confusion, not only in the argument but in the consideration of cases in this court.

In *Leonard v. Woolford,* 91 Md. 638, counsel submitted for use in this court, in lieu of the testimony taken at the trial, an agreed statement of what the testimony was. In dealing with the propriety of such a practice we said in that case: "But here an agreement of counsel made subsequent to the trial below, as to what is confessedly only a part of the testimony, is substituted for what the whole testimony actually was, so that it is impossible to know whether the state of facts upon which the judgment of this court is invoked is the same presented to the circuit court, and upon which its judgment was rendered. If we should assume upon such a record to review that judgment, we should do injustice alike to the court and to the appellee, whose title has been established by that judgment, subject to review only in accordance with settled legal rules, which have been disregarded in the presentation of this appeal." Again, in *Albert v. State, etc.,* 66 Md. 325, 334, it was said: "There are papers filed in the case called special exceptions on that point, but they are not signed and sealed by the court, but by the attorneys. From aught that appears in this record the legal sufficiency of the evidence may never have been brought to the attention of the judge, who tried the case. A paper filed in a case by the attorney unsigned and unsealed by the judge, cannot have the force and effect of an exception, although the parties may call it so. The special exception for want of evidence

must be within the bill of exceptions and not out of it." And in *Ray v. Morse,* 140 Md. 533, it was said: "The evidence or statement of the facts necessary to properly present the rulings of the trial court excepted to should be set out in the bills of exception to be signed by the judge, and can only be brought to the attention of this court by formal bills of exception, or a certificate of the judge or judges who presided at the trial."

In *Smith v. Hallwood Register Co.,* 97 Md. 359, in speaking of an agreement of counsel as to the existence of certain facts, it was again held: "We have not noticed this agreement, nor the alleged matters to which it relates, in our opinion, because neither the motion, nor the order of court nor the testimony referred to in the agreement, form part of the record in the case. We have repeatedly held in other cases that orders passed and proceedings had in the lower courts cannot be brought before us on appeal by agreements of counsel subsequently made. All such orders and proceedings must form part of the bills of exception or the duly certified record." And in *McDevitt v. Bryant,* 104 Md. 190, the court said: "The counsel for the respective parties have agreed that the facts above stated, together with certain docket entries, shall constitute the record for the Court of Appeals in lieu of an exact transcript of the original papers filed in the cause. The only method by which the record could be brought into this court upon an appeal is by a transcript thereof made by the clerk of the court from which the appeal is taken, under the seal of his office, as provided by sections 39 and 40 of article 5, Code 1904. The provision of the law in this respect was disregarded by the counsel and in lieu of the transcript of record the novel method was resorted to of agreeing that certain facts should constitute the record. Such procedure as that cannot be countenanced. This court must have the record made up and transmitted by the clerk as directed by the law relating to appeals, and counsel will not be permitted, as they attempted to do in this case, to dispense with a transcript of the record, and substitute therefor an agreed statement of facts."

In *Darrin v. Hoff*, 99 Md. 492, which was a mandamus case, the record contained certain testimony, but there was no "authentication of it by the judge who heard the case and there" was "no agreement of counsel that it" was "the evidence which was in reality adduced before the court." In referring to it, the court quoted the following · expression from *Street Commrs. v. Williams*, 96 Md. 232: "And that is the only question before us, because though the record contains considerable evidence on the issues of fact there is no bill of exceptions, no agreement of counsel or no certificate of the trial judge from which this court can know or be apprised that what is in the record was in fact the evidence considered by the court below. Without some such authentication of the testimony we are not at liberty to consider it. *Davis v. O'Berry*, 93 Md. 751."

*Tyrell v. Hilton*, 92 Md. 176, was an appeal from an order striking out a confessed judgment. There was no bill of exceptions embodying the facts, but in lieu thereof there was a full and complete transcript of all the testimony and papers used. in the trial of the motion in the lower court, certified by the clerk as agreed by counsel, and in respect to that practice in cases of that character the court said, "The authorities amply sustain this method of presenting the testimony in cases like the present." But in that case the "agreement" had been filed in the lower court, and the testimony referred to was a transcript of testimony taken in another case which was filed under the agreement. The two last cases, because of the circumstances peculiar to them, cannot be taken as modifying the general principle stated above, that, in cases such as this, this court cannot accept an oral statement of counsel, as a substitute for the authentication by the trial judge of evidence adduced before him, and that view seems to be generally accepted.

In dealing with a supposed stipulation as to evidence adduced before the trial court, it was said, in *Mulkey v. McGrew*, 2 Wash. Ter. 259: "We do not think, however, that, under the circumstances of this case, the conduct of the parties would be such as to amount to such a stipulation;

and, even if it did, this court would not give force to such
a stipulation, as, by so doing, it would put it in the power
of the parties to an action to have the same disposed of here,
upon evidence in whole or in part different from that which
was introduced in the court below."

To the same effect are *Hogden v. Commrs.*, 10 Kan. 638,
where it was said: "This paper is not authenticated as re-
quired by the statute to constitute it a case made. The
signature of the judge is as essential to a case as to a bill
of exceptions. Without such statutory authentication we
cannot examine into it. The agreements of counsel cannot
make a case or a bill of exceptions. That can be done only
in the manner provided by the Code.

As was said by the court in *Leonard v. Warriner,* 20 Wis.
42: 'We cannot permit the stipulation of the attorneys to
take the place of or do away with the necessity of such sign-
ing by the judge. If this practice were allowed, attorneys
might send up to this court for decision questions never
raised in the court below, and even cases to which the atten-
tion of the circuit court was never called.' " And *Jewett v.
Hodgdon,* 2 Greenl. (Me.) 336, where it was said: "And it is
also due in comity to the judge of the court below, that no
proceedings be had, tending to reverse his decision, until the
whole grounds of it be first certified under his own hand.
And for this purpose the cause was continued to the next
term." See also *City of Grand Rapids v. Whilllesy,* 32
Mich. 192; 4 *C. J.* 454.

As a result of this conclusion, in dealing with the court's
rulings on the prayers, they must be considered without
reference to the testimony or other evidence which was be-
fore the trial court, and entirely upon the soundness of the
legal propositions which they state, except that, where a
prayer which is predicated upon a finding of fact is refused,
and the evidence relating to that finding was before the trial
court, but is not before this court, it will be presumed that
the ruling of the trial court was correct. *Burtles v. State,*
4 Md. 273; *Reynolds v. Negro Juliet,* 14 Md. 118. Under
that rule no error can be asserted in respect to the court's

refusal of the defendant's prayer, so that the only question remaining is whether the court erred in granting the plaintiff's prayer.

That prayer instructed the court "sitting as a jury," that, if it found that "prior to the first Monday of March, A. D. 1920, the plaintiff was seised in fee simple and in possession of the two lots sued for in this case; that theretofore state and county taxes for the year 1919 duly levied against the same, were due and unpaid, and that the then treasurer of Prince George's County advertised the said property at tax sale as follows: Pugh, Paul B. & Company, lots 17, 18, block 34, Riverdale, Liber 4, folio 174, taxes, interest, penalties and cost, $10.63; that the assessment books of said county from which the said treasurer made up the said advertisement contained the official assessment of said property as follows: Lots 17, 18, B. 34, Riverdale, $600.00 valuation, real, 600, total 600 net assessment, 1918—600, 1917, 600; that said figures 600 meant six hundred dollars ($600) for said two lots; that at the time of the said tax sale the said two lots were worth $1,000.00; that the said treasurer offered the said two lots for sale, as a whole, and not separately, for the said taxes, interest, penalties and costs, amounting to $10.63; that he made no offer or attempt to sell the said two lots separately, or in any other way than as a whole, and so sold the said two lots to James H. Rimmer for the said sum of $10.63; that said Rimmer paid the said sum of $10.63 to said treasurer on the day of sale, March 1, 1920; that said sale was duly reported to the Circuit Court for Prince George's County in Equity Cause No. 5370 on March 1, 1920 and finally ratified by it on March 31, 1922; that the said treasurer made a deed to the said Rimmer dated July 22, 1922, in fee simple, which was duly recorded in Liber No. 188, folio 11; that said Rimmer thereupon took exclusive possession of the same; that the said Rimmer and wife made a deed dated December 4, 1922 for said lots, which was recorded in Liber 191, folio 155, to the defendant in this cause; that said defendant thereupon took exclusive possession of said lots and has so remained in

possession of the same until the present time; then the said tax sale was illegally made and its verdict must be for the plaintiff."

It will be noted that the propositions submitted by this prayer are that, even though the state and county taxes for the year 1919, "duly levied" against the property, were in default, and the property had been assessed for taxation at $600, and "Paul B. Pugh & Company" a corporation, owned it, the sale was void (1) because it was advertised in the name of "Pugh, Paul B. & Company" instead of "Paul B. Pugh & Company," and because the advertisement failed to describe the property as required by the statute, and (2) because both lots were sold together, without any attempt to procure separate bids on them.

There seems to be no apparent point in the objection to the name of the owner of the property as stated in the advertisement. Certainly no rational person of ordinary intelligence would be misled into believing that "Pugh, Paul B. & Company" was intended to describe any person, natural or corporate, other than "Paul B. Pugh & Company." But there is more force in the objection that the advertisement failed to describe the property as required by the statute. So far as we can learn from the record and briefs, the property was advertised and sold under the provisions of chapter 222, Acts 1898, and particularly of pars. 116 and 117 thereof. Those sections require the treasurer, before selling any property for unpaid taxes, to "make up and publish weekly, for six consecutive weeks before the first Monday of March in each year, a list of all taxes assessed upon real estate, which then remain unpaid and in default. Said list shall be inserted in one newspaper published in Prince George's County, Maryland, to be selected by said treasurer, and shall contain the name or names of the persons appearing upon the assessment book as the owner or owners of each piece of said real estate, and if said real estate has changed hands, in whole or in part, and such change be known to the treasurer, also, the present owners thereof, the location of the property by district, the quantity of land it contains and other matters

of description that may be known to the treasurer, such as its name, the adjacent property holders, the book and page of the county land records which contain the transfer of said property to the present owner, if ascertained, and the amount of taxes in default, with the interest and penalties accrued, and to accrue to day of sale upon each piece of said real estate."

An examination of the advertisement shows that it failed to state the quantity of land to be sold or the location of the property, except that the land was designated as "lots 17, 18, block 34, Riverdale, Liber 4, folio 174." The purpose of such an advertisement has been said to be dual, first, to warn the owner that his property is about to be sold for taxes, and, second, to apprise prospective buyers of what property the treasurer proposed to sell. *Richardson v. Simpson,* 82 Md. 160. While the advertisement in this case may conceivably have been sufficient to warn the owner of the fact that his property was about to be sold, it was certainly insufficient to inform persons, who might desire to bid on it, of its area and location. Reference was made, as has been stated, to "Liber 4, folio 174," but nothing was added to show whether that was a record of the treasurer's office, the county commissioners' office, or a land record of Prince George's County, or indeed what it was. It could be inferred that "Riverdale" is a district of Prince George's County, and that "Liber 4" is a land record of that county, but such an advertisement ought at least to be definite enough to identify the property advertised without the assistance of a conveyancer, and ought not to require its identity to depend upon guesses or inferences. "Block 34" would mean nothing unless connected by reference with some plan or plat by which it could be identified, and the advertisement contained no such reference. In our opinion the advertisement failed to comply with the plain and obvious intent of the statute, in that it failed to give such a description of the property as would afford reasonable information of its location to prospective buyers. *Richardson v. Simpson,* 82 Md. 158; *Waring v. Nat. Savings & Trust Co.,* 138 Md. 377; *Williams v. Bowers,* 197 Mass. 565; *Cooley on Taxation* (4th ed.), par. 1416. And since a proper notice or advertisement of the sale was a jurisdictional re-

quirement (Acts 1898, ch. 222, subsec. 116; *Waring v. Nat. Savings & Trust Co., supra; Cooley on Taxation,* par. 1409), it follows that the first proposition submitted by the plaintiff's prayer, based upon the hypothesis that if the advertisement was in the form stated the sale was void, was correct.

The second proposition is that the sale was void because neither of the lots was offered separately, but both were offered and sold as an entirety. The plaintiff's contention is that only so much of the property should have been sold as was necessary to pay the taxes in arrear, costs, interest, and penalties. The defendant's contention, however, based upon the finding required by the prayer, is that, since the two lots were assessed together as an entirety, it was necessary to sell both to pay the taxes on both, and it rests that contention upon the following provision of chapter 434, Acts 1904, subsec. 117A: "A tax sale shall consist of all the real estate in any election district of the county, advertised for sale and belonging to the same person." The construction placed upon this language by the appellant is that it required the treasurer to sell all the property owned by the delinquent taxpayer situated in any one election district, to collect the unpaid taxes on any part or parcel thereof, even though the property consisted of a number of separated and independent parcels. But such a construction is so repugnant to equity, fairness, reason, and justice, that we will not assume that the Legislature intended it to be so construed, unless such intent is expressed in the clearest and most explicit language. But the language quoted, standing alone, is neither clear nor explicit, and, if construed without reference to its context, it would be difficult if not impossible to determine just what its meaning was, but it is clear that it does not require the treasurer to advertise or sell all of the property of the delinquent taxpayer located in a single election district, unless such a course is necessary to procure sufficient funds to pay the taxes, costs, etc., due and unpaid, because it only says that a "tax sale" shall consist of the property which he does advertise, but it places no restriction upon him in the selection of the property to be advertised. But an examination of the context reveals that the real purpose of the provision was not to

penalize the taxpayer, but to benefit him, by reducing the cost of the advertisement, for, in that part of the section preceding the language quoted, it provides that all "tax sales" shall be advertised in two newspapers, etc., and that the cost of the advertisement of a "tax sale" shall not exceed fifty cents, and then follows the definition of a "tax sale." Aside from that statute, which has no application to the facts involved in the question under consideration, it was the duty of the treasurer to sell no more property than was reasonably necessary to pay the taxes and charges on the land, where it was divisible without loss. *Margraff v. Cunningham,* 57 Md. 585. Appellant contends, however, that *Textor v. Shipley,* 86 Md. 442, modified the rule stated in the last cited case, and held it did not apply to city lots. But that case did not hold that the rule stated in *Margraff v. Cunningham* did not apply to city lots, but that it did not apply to a small city lot. And the same reason which would make it improper to sell several parcels of land in the country to pay a tax bill for which the sale of one would suffice, would make it improper to sell a number of city lots to pay a bill for which the sale of one would be sufficient. In this case, if the jury found as the prayer required them to do, that the property consisted of two lots, separately numbered, and that together they were worth $1,000, it may fairly be inferred that they could have been sold separately without loss, and that the sale of one of them would have produced a fund sufficient to pay a bil' amounting to $10.63 for taxes, interest, penalties, and costs. Under such circumstances it was the plain duty of the treasurer to have offered the lots separately, and not to have offered them together until he had failed to secure a bid on either of them sufficient to have paid the taxes, interest, penalties, and costs, payable out of the whole property, and his failure to follow that course was sufficient in itself to invalidate the sale. *Cooley on Taxation,* par. 1430.

From what has been said, it follows that there was no error in granting the plaintiff's prayer, and the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*