HATTON A. WATERS ᴇᴛ ᴀʟ. *v.* WILLIAM F. PRET-
TYMAN, Sᴜʀᴠɪᴠɪɴɢ Tʀᴜsᴛᴇᴇ.

[No. 28, April Term, 1933.]

*Decided May 26th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter W. Dawson,* with whom was *A. M. Bouic* on the brief, for the appellants.

*William F. Prettyman,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

The appellee sold certain property located in the vicinity of Silver Spring, Montgomery County, under the power conferred upon him by deed of trust executed by the appellants to secure the payment of a note in the amount of $30,000. The property sold consisted of twenty-seven lots in block 4 of Jordan and Smith's Subdivision in Silver Spring. Block 4 is surrounded by improved, paved, streets, a short distance from Georgia Avenue extended, which street is the principal thoroughfare running through Silver Spring, and only a short distance from the District of Columbia line. The lots are adjacent to water, sewer and light facilities. It appears that the grantors in the deed of trust were in default of the payments covenanted to be made, both principal and interest, the amount remaining due being approximately $10,000. The sale was made on the 23rd day of July, 1932, the purchaser being the holder of the note secured by the deed of trust. The purchase price was $5,000. The advertisement of sale was inserted in the Montgomery Press, a newspaper published in that county, for more than twenty days prior to the date of sale, and was in these words:

"Trustee's Sale. Of valuable Lots on Improved Streets in Jordan and Smith's Addition to Silver Spring, Maryland. By virtue of the power and authority contained in a deed of trust from Hatton A. Waters and Effie A. Waters, his wife, to Otho H. W. Talbott, now deceased, and William F. Prettyman, trustees, dated June 8, 1925, and recorded among the Land Records of Montgomery County, Maryland, in Liber No. 377, Folio No. 11, the undersigned, as surviving trustee, will on Saturday, July 23, 1932, at 4.30

o'clock P. M. offer.for sale on the premises all the land and property described in said deed of trust with the exception of certain lots or parcels thereof which have been released from the operation of said deed of trust. The lots to be offered are known as lots 1 to 12, both inclusive, 16 to 19, both inclusive, 31 to 35, both inclusive, and 37 to 42, both inclusive, Block 4, Jordan and Smith's Addition to Silver Spring, as shown upon a plat of said subdivision, recorded among the Land Records of said County in Plat Book No. 4, Plat 301, said lots composing the whole of Block 4 except lots 13 to 15, both inclusive, and 20 to 30, both inclusive, and lot 36, heretofore released. Said block lies between Montgomery Avenue and Cedar, Bonifant and Fenton Streets in said subdivision, all of which are improved streets. It is a short distance only from the Brookeville pike or Georgia Avenue Extended, in the heart of the Silver Spring Area and convenient to roads, school, stores, etc. There are no buildings upon the lots. Terms of Sale: Cash, of which a deposit of $1,000.00 will be required on the day of sale. The sale will also be subject to overdue taxes, general or special, and unpaid instalments of special street improvement assessment. Conveyancing at the cost of the purchaser. William F. Prettyman, Surviving Trustee."

From this advertisement it will be seen that the twenty-seven lots were advertised for sale and were sold as an entirety; and the sale was made subject to overdue taxes, general or special, and unpaid installments of special street improvement assessments, which assessments were shown by the testimony to be about $500 per lot, payable in five installments. Upon report of sale to the court, exceptions thereto were filed upon the ground, first, that the price for which the land sold was grossly inadequate; and, second, that the property was not properly and sufficiently advertised. The power of sale upon default, contained in the deed of trust, is that the trustees shall have the power, and it shall be their or his duty, thereafter to sell, and, in case of any de-

fault of any purchaser, to resell the said described land and premises at public auction, upon such terms and conditions, in such parcels, at such time and place, and after such previous public advertisement, as the parties of the second part, or the survivor of them, or the trustee acting in the execution of this trust, shall deem advantageous and proper. The advertisement of sale refers specifically to the deed of trust containing the power above recited, and refers to the liber and folio of the Land Records of Montgomery County wherein the same was recorded, as also to the plat book and the page thereof where the plat of the land to be sold was recorded. The original deed of trust covered all of block 4 of Jordan and Smith's Addition to Silver Spring, containing forty-two lots, and laid out according to the plat. The sale was of twenty-seven of these lots; the other fifteen having been sold prior to the time of the sale now in question. The date of the sale was Saturday, July 23rd, 1932, and the time at 4.30 o'clock p. m., at public auction.

Upon examination of the deed of trust, it is shown that Block 4, upon which the $30,000 lien was placed, was subject to a prior mortgage in the amount of $100,000 to the Maryland Mortgage Company. There is a provision in the deed of trust that, upon the payment of fifteen cents per square foot for any portion of the mortgaged property designated by the grantors, the trustees would release such property and apply the said fifteen cents per square foot towards securing the release from the lien of the first mortgage. The first mortgage does not appear in the record, and the terms and conditions under which the Maryland Mortgage Company agreed to release this property do not appear, although it may be presumed that their mortgage lien on Block 4 had been removed by the application of the fifteen cents per square foot payments. Whether or not this presumption is a fact does not appear from the record; and the advertisement of sale does not express whether the property to be sold is fee simple property or incumbered in part by the lien of the first mortgage.

74

The testimony as to value was given on behalf of the appellants by a number of citizens and real estate operators in that vicinity, all of whom testified that the property was worth several times as much as the sale price. One witness offered in this respect by the appellees also values the property at more than it was sold for, but not greatly in excess thereof. It is settled law of this state that inadequacy of price, standing alone, is no ground for the refusal to ratify a mortgage sale, unless the price be so grossly inadequate as to, in and by itself, indicate mistake, fraud, or unfairness in the conduct of the sale. *Cohen v. Wagner*, 6 Gill, 236; *Johnson v. Dorsey*, 7 Gill, 269; *Hubbard v. Jarrell*, 23 Md. 66; *Kauffman v. Walker*, 9 Md. 241; *Warfield v. Ross*, 38 Md. 92; *Gould v. Chappell*, 42 Md. 470; *Mahoney v. Mackubin*, 52 Md. 366; *Bank v. Lanahan*, 45 Md. 396.

It is equally well settled that, if inadequacy of price be coupled with any irregular or faulty advertisement or conduct in the making or manner of sale, such as indicates that the property has not been advertised or offered for sale, or sold, under conditions and circumstances that would most likely produce the largest revenue, the court will set it aside and order a resale. The test is: Was the property sold under such conditions and terms as to advertisement and otherwise, as a prudent and careful man would employ, seeking to obtain the best price for his own property? *Hubbard v. Jarrell, supra; Warfield v. Ross, supra; Gould v. Chappell, supra; Glenn v. Clapp*, 11 G. & J. 1; *Carroll v. Hutton*, 88 Md. 676, 41 A. 1081; *Hopper v. Hopper*, 79 Md. 402, 29 A. 611.

We do not find from the record that the method and manner of advertising and selling the property here meets this test. It is undisputed that the property sold was twenty-seven lots, forming the major part of a town block, which block is surrounded by improved streets, with water, sewerage, and light connections, in a thriving business and homestead section, in close proximity to the line of the District of Columbia, accessible to churches, banks, stores, etc., and

which may be with accuracy termed a city block. The advertisement of sale was the principal notice which the public had or could get of the property to be sold, and the terms and conditions under which it would be sold. By this advertisement they were informed that the twenty-seven lots so located would be sold as one tract, the terms being cash, and a deposit of $1,000 being required on the day of sale. While the discretion in the manner and terms of sale, lodged in the trustee under the terms of the deed of trust, is contractual, and gives a wider latitude to the trustee than that ordinarily allowed trustees making sales under orders or decrees of the court, yet such discretion has never been held to be unlimited. When a sale thus made is attacked, it must be shown that the trustee did not abuse the discretion reposed in him, and that the sale was made under such circumstances as might be fairly calculated to bring the best obtainable price. The trustee not only represents the holder of the note secured by the deed of trust, but also the owners of the property, who would be entitled to any surplus remaining after the payment of expenses and the note secured by the deed of trust. The power of sale is derived from the contract of the parties contained in the deed of trust, but the report of the sale must be made to and ratified by the court before a deed for the property is given by the trustee to the purchaser. Upon the sale being reported to the court, it assumes jurisdiction and permits those interested in the sale or the proceeds thereof to file objections to its ratification. Upon such being filed, it is the duty of the court, in order to ratify the sale, to ascertain that it was fairly made and under such circumstances and conditions as might be reasonably expected to have produced the largest price obtainable.

In *Gould v. Chappell, supra,* the court, speaking through Judge Robinson, said: "The discretion thus reposed in the trustees was not a mere arbitrary discretion, but a discretion coupled with a trust, and to be exercised solely for the benefit of the *cestuis que trust.* It was their duty, therefore, in making a sale of the property, to act in a prudent and business-

like manner, with a view to obtain as large a price as might, with due diligence and attention, be fairly and reasonably obtainable under the circumstances. In other words, to exercise that diligence and caution which a careful and prudent owner would observe in the sale of his own property. If the sale be made under circumstances of haste and imprudence, or if the trustees fail in reasonable diligence in inviting competition, or adopt an injudicious and disadvantageous mode of selling the property, a court of equity ought not to ratify the sale." In *Robertson v. Chambers,* 113 Md. 232, 77 A. 287, 289, in an opinion by Judge Pattison, it was said: "It was the duty of the trustee in the sale of this property to exercise the same degree of judgment and prudence that a careful owner would have exercised in the sale of his own property; and he was bound for the protection of the interest of all the parties concerned to bring the property into market in such manner as to obtain a fair market price therefor."

Sound judgment and the protection of the interests of all parties concerned in this case, in our opinion, required that the twenty-seven lots here sold should have been offered separately, rather than as an entirety. It is clear that by so doing the number of potential purchasers would have been increased, for the simple reason that the ability to pay for a single lot would reside in a much larger number of persons interested in a section such as here described, being, as it is, devoted to and owned largely by individual home builders, than those who would be in a position to purchase the entire twenty-seven lots and comply with the terms of sale. The method of advertising and selling here employed is not conducive to the property producing the largest price, in which all of those having an interest were vitally concerned. This, coupled with a conflict of testimony as to the market value, in which the testimony as to the sale price being grossly inadequate largely predominates, required the chancellor to sustain the exceptions and set the sale aside. There was error in his not so doing. Such has been the rule heretofore estab-

lished by this court in previous decisions. *Hubbard v. Jarrell, supra; Carroll v. Hutton, supra; Nesbitt v. Dallam,* 7 G. & J. 494; *Thomas v. Fewster,* 95 Md. 446, 52 A. 750. The same principle was applied in the case of *Riverdale Presb. Church v. Pugh,* 154 Md. 550, 140 A. 844, wherein the court, in an opinion by Judge Offutt, set aside a tax sale where two contiguous lots in the town of Riverdale were offered and sold together.

*Decree reversed, with costs to the appellants.*