MARY LAURA BUSEY ET AL. *v.* CLARENCE W. PERKINS, TRUSTEE, ET AL.

[No. 48, January Term, 1935.]

*Decided April 3rd, 1935.*

The cause was argued before BOND, C. J., PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Daniel B. Leonard* and *Robert R. Bowie,* with whom were *H. Courtenay Jenifer* and *Bowie & Burke* on the brief, for the appellants.

*Burdette B. Webster* and *G. C. A. Anderson*, with whom was *Allan H. Fisher* on the brief, for Clarence W. Perkins, Trustee, appellee.

*Walter H. Buck*, submitting on brief, for the Royal Realty Corporation, appellee.

SLOAN, J., delivered the opinion of the court.

This appeal is from an order overruling exceptions to the ratification of a mortgagee's sale. The mortgage is found in the record in *Busey v. Perkins*, 168 Md. 19, 176 A. 474. By mortgage dated June 1st, 1929, Ida Grace Parrish and her sister, Mary Laura Busey, executed a mortgage to Clarence W. Perkins, trustee, to secure the payment of $87,027, representing notes on which one or the other, or both, were makers or indorsers, held by nine banks and four individuals, varying in amount from $715 to $29,506.54; all of the debts having been incurred long prior to the mortgage. Mrs. Busey's part of the obligations was relatively small, but she made herself jointly liable with her sister on the obligations of both, and thus she became hopelessly involved, and sacrificed her half interest in valuable property inherited from her father. The mortgage was a first lien on improved property situate at the intersection of the south side of Center Street and the west side of St. Paul Street in Baltimore, and a second lien on five large unimproved parcels and tracts of land situate in Baltimore County.

The mortgage on the Baltimore City property, pending the appeal to the October term, 1934, of this court, was foreclosed, and the property sold to the Royal Realty Corporation as a whole for $10,000. Code, art. 5, sec. 33. It had been advertised to be offered as a whole and in three parcels, and, the amount bid for it as a whole exceeding the aggregate of the bids in parcels by $1,250, the property was sold as a whole and so reported.

Among those for whom the mortgage was given were the Union Trust Company, the interest of which was $29,506.54, and the Baltimore Trust Company, the inter-

est of which was $18,733.52. The Royal Realty Corporation's bid was for the joint account of the Union Trust Company and the Baltimore Trust Company, according to their respective interests.

The mortgagors, appellants, filed exceptions to the ratification of the sale on several grounds, but only two were argued on this appeal: (1) That there was a combination, formed during the sale between the representatives of the two trust companies to buy jointly, which invalidated the sale; and (2) that the advertisement of sale did not adequately and sufficiently describe the property.

The evidence is that the property as advertised was first offered as a whole and bid up to $10,000 by Thomas B. McAdams, president of the Union Trust Company, for the Royal Realty Company. The bid for the whole property was reserved by the auctioneer, and the property in three parcels then offered separately and was bid to $3,500 for Nos. 526, 528, and 530 St. Paul Street; $4,250 for the parcel at the corner of Center and St. Paul Streets; and $1,000 for No. 23 Center Street, respectively. The whole lot was made up of five parcels, of which three were subject to ground rents totaling $80 a year, and two were in fee.

The evidence respecting the combination charged is that the bidding on the property as a whole was begun by Mr. McAdams for the Union Trust Company at $4,000. A bid was then made by Henry B. Thomas, Jr., a vice president of the Baltimore Trust Company, who bid $4,500. It was then arranged between Mr. McAdams and Mr. Thomas that the former should bid on the property for the joint account of the two trust companies, and Mr. McAdams carried the bidding to $10,000, which was the highest bid made.

There is no contention of any fraudulent purpose in the alleged combination or understanding of Messrs. McAdams and Thomas that the bidding be continued by one of them, nor is there any evidence from which it can be inferred that this agreement prevented anyone else from bidding on the property. If either of the two bidders

had been a stranger or outsider, and had been persuaded to desist from bidding, it could not have been said that the sale was fairly made, because at a public sale competition must be free, open, and unrestrained and above suspicion. If the agreement had been made before the sale, that one of the mortgagees should bid on the property for two or more of them in order to protect their interests, there could have been no criticism of such an arrangement. It appears clearly from the evidence that no such arrangement had been made in advance of the sale, and that, while the sale was going on, it was agreed that one of the bidders should cease bidding and the other bid for both. The test always is whether the final bid is at the best price obtainable at the time, the property sufficiently advertised, the sale fairly made and properly conducted. Mere inadequacy of price will not be sufficient to invalidate a sale unless so grossly inadequate as to suggest fraud or unfairness. *Walters v. Prettyman,* 165 Md. 70, 74, 166 A. 431, and cases there cited.

We cannot ascertain from the record how the various properties were valued with respect to the mortgage debt, or what value was put on the Baltimore City property. The impression is that the mortgagees were taking all the security available, to secure the obligations held by them, and we cannot therefore say what valuation the successful bidders or other mortgagees placed on the properties as a standard by which to determine the mortgagee's basis of value for the security. If this had been an original mortgage loan, in which it could be assumed that the mortgagee had placed the mortgage loan as the minimum value of the property, it would present a different situation, for then a bid ridiculously low as compared with the mortgage debt would cast suspicion upon the adequacy of the price. If the purchase is made by a stranger to the mortgage and the mortgagee takes his loss, no such question could arise.

Two real estate brokers valued the property as a whole at $25,000, less a fair capitalization of the $80 ground rent, but one of them testified that he could give no as-

surance that on a resale any greater price would be realized (*Weber v. Merowitz,* 160 Md. 674, 155 A. 169), and, where the objection is based on inadequacy of price, courts are reluctant to order a resale unless there is some assurance that a better price would result. It appears that the property is assessed at $36,000, which, instead of furnishing some evidence of value, is one reason why it was sold at such a low price. With the mounting costs of government and public services saddled on real estate, we have the real reason why real estate values are so depressed that no one is willing to buy unless the purchase price is so low as to neutralize the tremendous burden of taxation which ownership entails.

If the question of price were the only one involved in this case, we would have no difficulty in affirming the order appealed from, but the charge is that the property is bought by two companies who started at the sale as competitors. The thirteen mortgagees will share *pro rata* in the proceeds. Two of them successfully bid on the property, and their hope must of necessity be that they can sell at an advanced price and, to the extent of their profit, recoup part of their loss and thus reap an advantage over the other mortgagees. They cannot be blamed for this, but to get themselves in this position they cannot arrive there by any method regarded as irregular, but must keep themselves within the rules of equity governing in such cases. We do not know, and the record does not inform us, to what extent either of them was willing to bid. If their agreement to buy together, made at the sale, could have resulted in a reduced price for the property, then the sale ought to be set aside. What was said by Chancellor Hanson in *State v. Brooks,* 2 Bland, 42, is so apt as to bear repetition, and that is: "Where property appears to have been sold under its value, the slightest circumstance of fraud, combination, or management, ought to be deemed sufficient, on the application of a party interested, to set aside the sale. * * * If a sale, under such circumstances, should be ratified, the encouragement which the precedent might af-

ford, would probably operate not only against the interest of the parties concerned in sales, but against substantial justice and the reputation of this tribunal." And the order appealed from will be reversed and the case remanded.

As there will be a resale, it is only necessary to say that we find no fault with the manner in which the property was advertised for sale.

*Order reversed, with costs to the appellants to be paid by the Royal Realty Corporation.*