HENRY WEBSTER ET AL., EXECUTORS, *v.*
J. GLASGOW ARCHER, JR.

[No. 33, January Term, 1939.]

246

*Decided February 22nd, 1939.*

` The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*William H. Harlan,* for appellants.

*J. Glasgow Archer, Jr.,* with whom was *Stewart O. Day* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Seth B. Taylor, on May 5th, 1915, executed to Noble L. Mitchell a mortgage on two lots of ground at and near the village of Aldino in Harford County, to secure the repayment of a debt of $1600.·

Title to that mortgage passed eventually by mesne assignments to J. Glasgow Archer, who, on June 30th, 1938, instituted in the Circuit Court for Harford County pro-

ceedings to foreclose it, and on August 2nd, 1938, reported a sale of it to Nelson Cooper and Myrtle B. Cooper for $2050. On July 13th, 1938, Henry Webster and William H. Harlan, executors of Edwin H. Webster, filed a petition in the proceedings in which they alleged that they held a second mortgage for $800 on the land covered by Taylor's mortgage to Mitchell, and also a judgment against Taylor and his wife for $962.67, which they prayed might be allowed out of any surplus that might result from the foreclosure. On August 23rd, 1938, they filed exceptions to the sale reported by Archer, on these grounds:

"(1) Because the mortgaged property consists of two separate and distinct tracts of land; one containing two and one-half (2½) acres, more or less, improved by a substantial dwelling house and numerous outbuildings and very advantageously situated as a residence on the south-west corner on the Churchville-Aldino Road and the Old Church Road; and the other, of a tract of ten (10) acres and thirty-one (31) perches, more or less, situate a long distance from the first mentioned tract and unimproved and the trustee offered both of said tracts together and sold the the same to Nelson J. Cooper for the above sum.

"(2) Because said sale was at a totally inadequate price and would cause a serious loss to your objectants.

"(3) Because your objectants are informed and believe that the Assignee had stated to prospective buyers that he would offer these tracts separately, but at the last moment, changed his mind and offered them together.

"(4) Because your objectants are further informed and believe that persons were present at the sale prepared to bid on and buy these tracts as separate properties, but no opportunity was given them by the Assignee to bid thereon.

"(5) Because your objectants are further informed and believe that if said tracts are offered separately, buyers will be found who will buy at substantially higher figures," and later alleged as additional grounds that the ad-

vertisement was not only inadequate but misleading, and that the assignee sold more property than was necessary to satisfy the mortgage, accrued interest and costs.

In connection with those exceptions testimony was taken, the parties heard, and at the conclusion of the hearing the court over-ruled the exceptions and on October 8th, 1938, ratified the sale. This appeal is from those orders.

The most important objection to the sale argued in this court was that the two parcels of land were not contiguous, that only one was improved, and that had they been offered separately the improved lot would have been sold for enough to pay off the first mortgage, thereby releasing the second lot from the lien of that mortgage. But there is nothing in the record to enable this court to find that the lots are not contiguous, or that they were not used together as a single tract. The appellants did in their exceptions, which were verified by affidavit, allege that the lots were not contiguous, and the appellee admits in his brief that they are several hundred feet apart. But this is a court of appellate and not one of original jurisdiction. It cannot therefore notice facts not in the record, nor facts which, although in the record, are not properly authenticated, even though counsel for all parties agree and request that they be considered in dealing with the case (*Riverdale Presbyterian Church v. Pugh & Co.*, 154 Md. 550, 553, 140 A. 844; *Price v. Miller*, 165 Md. 578, 580, 169 A. 800), for a record can not be made in this court but must be made in the trial court.

This court in *Hart v. Hart,* 165 Md. 77, 78, 166 A. 414, in deciding an appeal from an order dismissing a petition to strike out a judgment by confession, said that the trial court would consider admissions made by the pleadings of the parties, and that since the plaintiff did not deny by "subsequent pleadings" allegations of facts which required affirmative proof on the part of the defendant and petitioner, that such averments, with the record of prior proceedings in the case, might be regarded as the facts upon which the trial court acted in dismissing the peti-

tion. The court there however was dealing with the practice in actions at law, which is characterized by this vital and basic difference from the practice in equity. The object and purpose of pleading and practice at law is to have the parties, by a series of allegations and denials presented in orderly sequence, come at length to some sharp clearly defined issue of law or of fact, and ordinarily the failure of one party to traverse the facts alleged in a pleading will be taken as an admission of such facts (1 *Poe, Pl. & Pr.*, sec. 2), while in equity the pleader may admit the facts charged, deny them, or disclaim such knowledge as will permit him to either admit or deny them, and require the party alleging the facts to prove them, and in cases where no answer is required, no allegations of facts alleged in a motion or petition will be considered unless admitted or proved, although Chancellor Bland in *Chase's Case,* 1 Bland 206, 212, in a statement not wholly consistent with that view, said: "If a petition of this kind, bringing before the court a matter which could not have been made the subject of a mere motion, because of the necessity of putting upon the record the new facts therein set forth, and apprising the party of all the circumstances on which the application is made, so as to enable him to controvert them, if he can; be not regularly and properly denied by a written answer on oath, the whole, or so much of it as is not denied must, by analogy to the course of this court in similar cases, be taken to be true. *Shipbrooke v. Hinchingbrook,* 13 Ves. 393; 2 *Harr. Pra. Chan.* 40, 129, 133." But in that case a show cause order had issued upon the petition for a receiver against the respondent, who had the control of property in which she claimed dower. But since the object of equity jurisprudence is to so deal with forensic controversies as to do full, adequate, and complete justice between the parties, in accordance with the dictates of natural justice and good conscience, unfettered by the formalism and inflexibility which in varying measure limits the power of law courts, equity practice requires the parties in their pleadings to fully, candidly and hon-

estly disclose every matter and fact known to them, knowledge of which is essential to a full, just, and equitable settlement of the entire controversy. As a natural corollary of that principle, the pleader is also under an obligation to convince the court by proper proof of the truth of his allegations.

So, even in cases where a decree *pro confesso* against a defendant may be entered for his failure to appear and answer, the court may nevertheless require the plaintiff to support the allegations of his bill by adequate proof. General Equity Rule No. 16. And in cases where no answer is required, as in exceptions to a judicial sale or to an auditor's account, the uniform practice in this state is to disregard any allegation made in such exception, petition, or motion, the truth of which is not admitted nor apparent on the record, unless it be supported by proof.

So in *Farmer v. Loyola College,* 166 Md. 455, 461, 171 A. 363, it was said: "Of course, the bill of complaint, although sworn to, is not evidence of the facts therein alleged, in favor of the plaintiff." And in *Northrop v. Beale,* 170 Md. 439, 444, 184 A. 900, 902, quoting *Miller on Equity Proc.,* sec. 601, in speaking of exceptions to a sale it was said: "Mere exceptions on questions of fact, without evidence, although under oath, and although the answer to the exceptions does not deny their averments, must be over-ruled." The same thing was said in *Forest Lake Cemetery Co. v. Baker,* 113 Md. 529, 537, 77 A. 853; *Roberts v. Loyola Bldg. Assn.,* 74 Md. 1, 21 A. 684, (Perp.); *Thom v. Baltimore,* 154 Md. 273, 289, 141 A. 125; *Sunderland v. McAbee,* 143 Md. 81, 83, 121 A. 844; *O'Sullivan v. Buckner,* 107 Md. 33, 36, 68 A. 356. In *Sunderland v. McAbee, supra,* the court quoted with approval the statement in *Forest Lake Cemetery v. Baker, supra,* that, "where facts are relied on in exceptions to a sale they must be shown by proof, and the burden is on the exceptant to establish them. His affidavit to the exceptions is not sufficient, even when the facts alleged are not denied by an answer." See, also, 21 *C. J.* 548, *et seq.*

Disregarding therefore the statements in the exceptions, in the absence of any proof of any kind as to their relative location it cannot be assumed that the two lots were not contiguous. If they are contiguous and used by the mortgagors together as a single tract of land, there can be no reasonable criticism of the advertisement of sale on the ground that it failed to state on which lot the improvements were located, or that the two lots were separate and independent of each other.

Nor, in the absence of any proof that the lots are not contiguous, is there any substantial merit in the objection that the trustee did not offer them separately before offering them together as a single tract. They were described in the mortgage not by metes and bounds but by reference to title deeds, and as "containing together twelve acres, two roods and thirty-one perches, more or less," which is some evidence of the fact that the mortgagor regarded them as one property. In this case that objection may be considered with the objection that the trustee sold more of the property than was necessary to pay the mortgage debt, interest and costs.

In dealing with these objections it must be remembered that there is no presumption against the validity of a mortgage or other judicial sale reported by an assignee for foreclosure, a trustee, or any other judicial officer, but on the other hand there is a presumption that the sale was fairly made, and that the antecedent proceedings, if regular on the face of the record, were adequate and proper, and the burden is upon one attacking the sale to prove the contrary, *Lewis v. Beale*, 162 Md. 18, 22, 158 A. 354; 41 *C. J.* 1032; *Northrop v. Beale*, 170 Md. 439, 184 A. 900; *Johnson v. Dorsey*, 7 Gill 269, 287.

An assignee selling mortgaged property at a foreclosure sale is a trustee for the mortgagor and persons claiming under or through him (*Miller's Equity Procedure*, secs. 456-458, citing *Berry v. Skinner*, 30 Md. 567, 574; *Powell v. Hopkins*, 38 Md. 1, 12; *Mackubin v. Boarman*, 54 Md. 384, 388; *Wicks v. Weston*, 59 Md. 270, 277; compare *Wareheime v. Carroll County Bldg. Assn.*, 44

Md. 512, 520; *Korns v. Shaffer*, 27 Md. 83, 89), and is under a duty (1) to exercise the same degree of prudence, care, diligence and judgment, that a prudent man of ordinary business judgment and experience would exercise, in selling his own property, to see that the property is sold for the best price obtainable at such a sale (*Miller's Equity Proc.*, sec 456; *Wicks v. Wescott*, 59 Md. 270, 277), and (2) to sell no more of the property than is necessary to pay the mortgage debt, accrued interest, and costs of foreclosure, *Wiltse on Mortgage Foreclosures*, sec. 573; 41 *C. J.* 972; *Patterson v. Miller*, 52 Md. 388, 397, 398; *Thomas v. Fewster*, 95 Md. 446, 449, 52 A. 750. For, as stated by Wiltse: "In a mortgage foreclosure the plaintiff is entitled to the sale of a sufficient amount of land to pay his claim and the costs of the suit, and no more; and the sale should be made by the officer conducting it in such a manner as to pay the just demands of the plaintiff without inflicting unnecessary loss upon the debtor, or interfering with the rights and interests of subsequent incumbrancers." But while that is true, as aptly stated in 19 *R. C. L.* 708, "whether the land is in fact suitable for division and whether parts thereof may be separately enjoyed often depends on the facts of particular cases and it will not be presumed that the mortgagee or trustee abused his discretion. On the contrary, the debtor complaining because separate lots were sold as one parcel has the burden of proof to show that they were not occupied as one parcel."

The mere fact that mortgaged property which is divisible is sold as a whole rather than by parcels is not itself evidence sufficient to justify annulment of the sale, but in addition to that it must appear that that method of selling it was prejudicial to the mortgagor, his privies, or creditors, and the burden of showing that is upon one attacking the sale. Unless the precise method of sale is prescribed by contract or decree, some discretion is necessarily granted to the trustee, attorney, or assignee, making the sale, as to the manner in which the property will be offered. That discretion will naturally be affected by

the character and location of the property and other circumstances peculiar to the case, so that it is impossible to lay down a hard and fast rule that divisible property must under all circumstances be sold in parts.

So in *Thomas v. Fewster, supra; Hubbard v. Jarrell,* 23 Md. 66, 84; *Mays v. Lee,* 100 Md. 227, 59 A. 848; *Carroll v. Hutton,* 88 Md. 676, 679, 41 A. 1081; *Long v. Worden,* 148 Md. 115, 121, 128 A. 745, because land susceptible of division and sale in parts was sold as a whole, the sale was set aside, but in *Edgecombe Park Co. v. Finney,* 121 Md. 320, 326, 88 A. 143; *Hopper v. Hopper,* 79 Md. 400, 403, 29 A. 611; *Hughes v. Riggs,* 84 Md. 502, 36 A. 269; *Stirling v. McLane,* 103 Md. 47, 63 A. 205; and *Hunter v. Highland Land Co.,* 123 Md. 644, 91 A. 697, although divisible land had been sold as a whole, the sales were ratified. Those cases are not in any sense in conflict, but are all consistent with the rule that whether a judicial sale of divisible lands as a whole rather than in parcels should be set aside depends upon the character and location of the land and the attendant circumstances, and whether the method of sale was prejudicial to the person objecting thereto.

Reverting to the facts, it is impossible to conclude, from the evidence in this case, either that a sale of anything less than the entire mortgaged property would have been sufficient to pay the mortgage debt, interest, and costs of foreclosure, or, that the land would have brought a higher price if the two lots had been offered separately than that offered for it as a whole.

One witness, Elmer Walter, owns property adjoining what is referred to as "the ten acre tract," which, it may be inferred, although not so stated, is part of the mortgaged property. He testified that the assignee had told him before the sale that the lots would be offered separately, and that had they been so offered his wife's sister who lived in Wisconsin would have given $500 for "the ten acre tract," and that then he so informed the trustee. He was then asked to give an opinion as to what he thought the two and a half acre lot, which had the build-

ings on it," was "fairly worth," and he then gave this testimony: "I don't know that I can just say. My wife's sister was supposed to buy it, and she told us what she would give— (The Court) That is hearsay. (The Witness) (continuing) Well, then, two thousand dollars."

There was no evidence that the witness had ever bought or sold property, that he knew of sales in the neighborhood, or that he had any knowledge of any kind of land values there.

The only other witness sworn in the case was Hugh B. Bailey, also a neighbor, who did have knowledge of local land values and who testified that a "fair estimate of the value of" the house and the two and a half acres "would be $2000." But on cross-examination he gave this testimony: "The price that you have mentioned—is that for a sale by a person willing to sell but who does not have to sell, and a buyer who is willing to buy but does not have to buy? A. I was asked for the fair value of the property. I don't like to get my neighbors into trouble and I don't like to be involved in this hearing. I do say that I consider $2000 a fair price for that property. Q. That is for a sale by a party willing but not forced to sell—do you understand what I mean? A. One way it might bring more—the other way it might bring less. Q. Which way do you think the property is worth $2000—at a forced or distressed sale, or a sale between two parties voluntarily? A. I would say at a sale voluntarily made between two parties."

The same witness, when asked to describe the "type of soil" of "the ten acre lot," testified: "It is just common Aldino clay. It is no type of top soil to do anything with. It is very poor ground. Q. How is the drainage of this ten acre parcel? A. The draining is poor. (The Court) What is meant by 'Aldino clay'—what is commonly known as white oak soil? A. (Mr. Harlan) Yes, sir. (The Witness) It is just about as common as they make it. It is just about as bad as any in that section of the county."

In *Baltimore v. Smith & Schwartz Brick Co.*, 80 Md. 458, 472, 31 A. 423, 425, it was held that one "having suf-

ficient knowledge on the subject and acquainted with the land in question" may be permitted to express an opinion as to the value of land, even though he is not an expert or specially qualified by training and experience to value land. But it is implicit in that rule that it must appear that even such a witness must have some knowledge of land values in the neighborhood of that which he is asked to value (11 *R. C. L.* 638; *Baltimore v. Smith & Schwartz Brick Co., supra*) ; otherwise his valuation would not be a reasoned opinion but a mere conjecture or guess. Apart from the fact that Walter's sister-in-law was willing to pay $500 for the "ten acre tract," it did not appear that he had the slightest knowledge of land values in the neighborhood of the mortgaged property, and yet he was permitted in answer to this question, "What do you think that that is fairly worth," to say, "Well then, two thousand dollars." It is obvious that his so-called opinion, if admissible at all, was a mere conjecture without any probative force.

Bailey, who was a qualified witness, also said that the value of the "house and the two and a half acres" was two thousand dollars, but on cross-examination he said that valuation assumed a voluntary sale. This, which is all the evidence on the point, is wholly insufficient to support a judicial finding that the price bid for the property did not represent its fair value, or that it would probably bring a higher price if offered by lots at a resale.

So that, assuming that the lots were separate and independent and should have been offered separately, the appellants have nevertheless failed to show that they were prejudiced or suffered any loss as a result of the trustee's failure to so offer them, and the order of ratification must be affirmed. That result is reached with less reluctance in this case because a reversal of the order could not, except as to costs, possibly benefit the appellants.

It appears from the record that appellants filed no appeal bond. Code 1904, art. 5, sec. 29 (now Code Pub. Gen. Laws 1924, art. 5, sec. 33), provides that no appeal from any decree or order shall stay the execution or suspend

the operation of the order or decree from which the appeal is taken unless the appellant shall give an appeal bond with security, etc. In *Raith v. Building & Loan Assn.*, 140 Md. 542, 545, 118 A. 67, following the earlier case of *Wampler v. Wolfinger,* 13 Md. 337, it was held that, in the absence of such a superseding bond, the rights of a purchaser remain unaffected by the appeal, even though the decree or order is reversed. That case was followed by *Shirk v. Soper,* 144 Md. 269, 124 A. 911, and the construction placed upon the statute by those cases and the earlier cases on which they rest must be regarded as settled. *Miller's Equity Proc.,* sec. 341; 3 *Am. Jur.* 196-198; 4 *C. J. S., Appeal and Error,* sec. 679, p. 1160; 16 *R. C. L.* 116; *Holthaus v. Nicholas,* 41 Md. 241, 263. In this case the sale has been reported and finally ratified, and, in speaking of sales under a decree, Mr. Miller, in his work on *Equity,* says: "By the sale to him the purchaser acquires an inchoate and equitable title which becomes complete upon final ratification; whereupon the ratification retroacts, and the purchaser is regarded by relation as the owner from the period of sale. He is entitled to the intermediate rents and profits of the estate. He becomes the substantial owner of the property from the moment of final ratification; and is not only entitled to the possession of the property, but it remains at his risk, notwithstanding the legal title may not be conveyed. Until the purchase money is paid, however, the right of possession belongs to the vendor. Where a loss, as by fire, occurs before the sale is ratified, the loss falls on the owner and not upon the purchaser, for the reason that the contract of sale is not a complete sale until it has received the sanction of the court. But where a loss occurs after confirmation, by which the contract is consummated, the loss falls on the vendee, even though no purchase money has been paid and the vendor remains in possession. If property appreciates after the sale, it is the purchaser's gain; if it depreciates, it is his loss." Section 512. *Cf. Herman v. Mondawmin Bldg. & Loan Co.,* 145 Md. 480, 125 A. 814. Applying those principles

by analogy to a mortgage foreclosure sale, it follows that upon ratification of the sale the purchaser took an equitable title to the mortgaged property, and was entitled to complete the payment of the purchase money, and upon such payment to receive from the assignee a deed for the property. Since, therefore, the appellants filed no appeal bond in this case, a reversal of the order could not affect that right of the purchaser. 41 *C. J.* 991.

While the conclusion reached in this case does not require this discussion of the effect of Code 1904, art. 5, sec. 29 (now Code Pub. Gen. Laws 1924, art. 5, sec. 33), it has been given because the argument in this court indicated some doubt as to whether the rule stated in *Raith v. Building & Loan Assn.* and *Shirk v. Soper,* extended to cases where, although the sale was finally ratified, no deed had passed prior to the appeal. But those cases, and especially the case of *Wampler v. Wolfinger,* permit no such doubt.

It follows that the order appealed from must be affirmed.

*Order affirmed, with costs.*