CLARENCE N. WOOLLEY *et al. vs.* ALPHONSE TOUGAS.
ALPHONSE TOUGAS *vs.* CLARENCE N. WOOLLEY *et ux.*

AUGUST 1, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   These two cases involve the same parties and issues and are based upon the same facts.  The first is an action in assumpsit brought by the transferees of a mortgage upon real property, after a foreclosure sale thereunder, to recover the amount of a deficiency due upon the mortgage note executed by the mortgagor.  The second is a bill in equity brought by that mortgagor to restrain the transferees of his mortgage from further proceeding in that action at law, and also to set aside the foreclosure sale for alleged fraud and unfairness therein.  The first action is before us on the defendant's bill of exceptions, to the decision of the trial justice in favor of the plaintiffs, and the second is here on the complainant's appeal from the final decree in equity, denying and dismissing the bill of complaint.

The evidence shows that on May 26, 1927 Alphonse Tougas executed a first mortgage upon certain of his real property to secure his promissory note in the sum of $4200.  The payee of the note and the mortgagee named in the mortgage deed was Marjorie F. Brown, a clerk in the office of Clarence N. Woolley.  The latter actually loaned the money to Tougas.  On the same date, Marjorie F. Brown endorsed the mortgage note in blank without recourse and transferred the mortgage deed to Clarence N. Woolley and his wife as joint tenants.  For convenience these transferees and holders of the mortgage and note will be referred to as the mortgagees and Alphonse Tougas as the mortgagor.

In May 1934, the mortgagor began to be in arrears in the payments of interest due under the mortgage and continued to be in arrears thereafter, and he also failed to pay the taxes assessed against the property by the city of Pawtucket for the year 1936. The mortgagees notified the mortgagor in October 1937 that, if he failed to pay the overdue mortgage interest and the 1936 taxes by a certain date, foreclosure proceedings would be instituted. After certain conferences with one of the mortgagees, an additional delay was granted the mortgagor to permit him to arrange for the payment of these mortgage obligations, and, upon his inability and failure to comply therewith, the mortgagees commenced proceedings to foreclose under the power of sale contained in the mortgage.

Accordingly the foreclosure sale was duly advertised and included a notice of the mortgagees' intention to bid at the sale. The sale was held on November 6, 1937 and some ten or twelve people were in attendance, including the mortgagor. The terms of the sale were regularly announced by the auctioneer and the property was sold to the mortgagees for $2000, that being the highest and only bid. A mortgagees' deed of this property to these mortgagees was later made and was recorded. Thereafter, on November 9, 1937, the mortgagees began their action at law against the mortgagor by attachment of his other property, which apparently was otherwise encumbered, to recover the deficiency due upon the mortgage note. The defendant, mortgagor and maker of the note, filed the general issue and an equitable plea substantially alleging that the mortgagees were estopped, by their wrongful conduct and by their purchase for a grossly inadequate price at the sale, from taking advantage of the mortgagor.

The mortgagor then brought his bill in equity to restrain the mortgagees from taking further proceedings under the action at law, and to set aside the foreclosure sale because of alleged fraud and because the sale was not a fair

and impartial one. On these issues evidence was introduced and the trial justice, sitting without a jury, gave decision in the action at law in favor of the plaintiffs for $2403.01, being the alleged balance due on the mortgage note after crediting thereon the bid of $2000 by the mortgagees. The same justice, after hearing, also entered a final decree in equity, denying and dismissing the bill of complaint.

The mortgagor contends substantially that the sale should be set aside because the evidence shows that it was made for a grossly inadequate price and that it was not a fair and impartial sale. The trial justice, however, found in substance that the mortgagees' bid was not a grossly inadequate price at the time of the sale; that the terms of the sale were duly advertised and were stated by the auctioneer at the sale; that the mortgagees said or did nothing which in any way would discourage or influence the bidding by others; and that the evidence did not support the complainant's allegations of fraud, bad faith, or of an unfair sale. Under our well-established rule, his findings on conflicting evidence are entitled to great weight and will not be set aside unless they are clearly wrong.

From our examination of the evidence, we cannot say that the trial justice was clearly wrong in such findings of fact. There was credible evidence that the house had depreciated from lack of reasonable repair and was in "a very run-down condition"; and that if at least $500 were expended to recondition it and put it "in a fair condition" it might be sold, if free and clear of all encumbrances, to a willing customer for $4000. Considering this fact, with the investment of several hundred dollars which would be necessary to bring the interest on the mortgage to date and to pay for overdue taxes, and the further testimony that an expert real estate agent had actually tried and failed to sell the property for $3000, the evidence does not support the mortgagor's contention that there was a gross disparity between the purchase price and fair market value at the time of the sale.

This court has held that inadequacy of price alone is not sufficient reason to impeach or to set aside a sale. *Galvin* v. *Newton,* 19 R. I. 176; *Nichols* v. *Flagg,* 24 R. I. 30; *Babcock* v. *Wells,* 25 R. I. 30; *Beacon Hill Land Co.* v. *Bowen,* 33 R. I. 404. It is true that a réal inadequacy of price may be taken account of in connection with other circumstances in determining whether there has been a fair sale. Likewise, the court will scrutinize such sales, where a mortgagee seeks to establish against the mortgagor a deficiency on the note, to prevent overreaching of the mortgagor by the mortgagee, whose relation to the mortgagor in such circumstances has been considered as in the nature of a trust. This is in accordance with the equitable doctrine that a mortgagee should not have the whole debt and the whole estate.

In the instant case, however, the evidence shows no word or act of the mortgagees which would reasonably mislead, discourage or influence others in the bidding; and no misrepresentation of the property or any of the conditions of sale, in order to induce a low price at the sale for their own advantage. On the contrary, there is evidence that the mortgagees did not want the property, and gave reasonable opportunities to the mortgagor to redeem it, and that the sale was fairly advertised and conducted.

The mortgagor did not allege, nor does the evidence show, any payment, tender, or offer to tender the payment, of any substantial part of the indebtedness, or even of the overdue taxes and interest on the mortgage. On the contrary, it shows that the mortgagor was unable to pay his indebtedness to the mortgagees. Moreover, the transcript discloses that the mortgagees, even after the trial justice had decided the cases in their favor, offered in open court to "stand ready and willing for a period of at least thirty days to reconvey this property to Mr. Tougas, if he will reimburse me for my actual disbursements . . . ."

In the absence of any evidence of fraud or of gross inadequacy of price or of any circumstances which might combine

with inadequacy of price to support an inference that the mortgagees had overreached the mortgagor, we are of the opinion that the sale was not unfair and that there was no error in the refusal of the trial justice to set it aside or to grant the relief prayed for by the mortgagor; and that there was no error in his decision for the plaintiffs in the action at law.

The mortgagor has cited the following cases from New Jersey and Maryland in support of his contention. *Lurie* v. *Hockenjos Co.,* 113 N. J. Eq. 504, 167 A. 766; *Fidelity Union Trust Co.* v. *Pasternack,* 196 A. 469 (N. J.); *Federal Title & Mtg. Co.* v. *Lowenstein,* 113 N. J. Eq. 200, 166 A. 538; *Harvey* v. *Provident Savings Bank,* 170 Md. 295, 184 A. 228; *Busey* v. *Perkins,* 168 Md. 453, 178 A. 254. These cases clearly do not disclose circumstances which are comparable to the facts of the instant cases. Such of them as do support the mortgagor, appear to be bills in equity to foreclose a mortgage and to involve other exceptional circumstances, including purchases for a mere nominal price or sales under extreme conditions which prevailed at the depth of the general business depression. None of these circumstances, however, appear in the evidence in the cases before us.

We also have examined the numerous Rhode Island cases which the mortgagor cited in support of his contentions. We are not in disagreement with the law therein stated; but all of them are clearly distinguishable from the instant case upon their facts. For example, he relies strongly upon *Nichols* v. *Flagg, supra,* and the recent case of *Hanley* v. *Brayton,* 60 R. I. 101, 197 A. 198.

In the *Nichols* case the court found and the evidence clearly showed that "The whole transaction, from the advertisement to the delivery of the deed, is so convincing of collusion and unfair dealing on the part of the owners of the property, the treasurer of the bank, and the purchaser, as to render a consideration of questions of law needless."

In the *Hanley* case the mortgagee held the first and second mortgages and foreclosed the second, while allowing the first mortgage to appear open and unsatisfied in the records of mortgages, whereas in truth and fact it had been satisfied. The subsequent lack of attendance at the sale and the purchase for a merely nominal price, added to the other evidence, warranted the conclusion that the sale should be set aside. There is no evidence in the instant cases which would bring them within the law as stated and applied in any of the Rhode Island cases above referred to or which were submitted by the mortgagor.

In the law action the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment upon the decision.

In the equity case, the complainant's appeal is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the superior court for further proceedings.

*Walter J. Hennessey,* for Clarence N. Woolley *et al.*
*James M. Gillrain,* for Alphonse Tougas.