WILLIAM P. HANLEY *et al. vs.* EDITH B. BRAYTON, *Ex. et al.*

JANUARY 20, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an appeal from a decree of the superior court setting aside a mortgage foreclosure sale and enjoining further prosecution of a pending action at law brought by the mortgagee's executrix against the mortgagors, the present complainants, for a deficiency. The cause was heard in the superior court on bill, answer and proof. The complainants did not offer any evidence but rested on their sworn bill. On the allegations therein and the respondents' evidence the trial justice held that the sale was not fair and just and should be set aside on the authority of *Hanley* v. *Brayton,* 60 R. I. 101, wherein this court had declared null and void a prior foreclosure sale conducted under the power of sale in this same mortgage.

In their reasons of appeal, respondents allege that the decree of the superior court is erroneous and should be re-

versed because the decision upon which it is based is contrary to both law and equity, the law and the evidence and the weight thereof. They contend in their brief and argument that the power of sale was exercised strictly according to law, and that the manner in which the sale was actually conducted was fair and unaffected by any fraud or unjust practice that would justify equity in setting it aside.

The complainants on their part contended here, as they did successfully below, that the undisputed facts in this case made it so like the case above referred to in 60 R. I. 101 that the superior court was bound to follow that case and hold the instant sale void for the same reason that this court had held the prior sale void. The facts upon which they based this contention were that the respondent executrix commenced proceedings to again foreclose this mortgage while the suit to avoid the prior sale was still pending in this court for approval of the decree to be entered in the superior court; that the decree avoiding said prior sale was never entered on the land records of the city of Warwick; that as a result anyone intending to bid at the second foreclosure sale would, upon examining such records, be deterred from bidding at such sale because it would appear from those records that the title of the mortgagors had been sold at the prior foreclosure sale.

Inasmuch as the decision of the superior court upon which the decree in favor of the present complainants is based rests solely upon the decision of this court in *Hanley* v. *Brayton, supra,* it is important to determine at the outset whether the factual situation in the instant cause is essentially the same as in that case. That case disclosed a set of facts which in their entirety called for the interposition of the extraordinary jurisdiction of equity to prevent possible injustice to the complainant mortgagors. That is, it appeared to us that the mortgagee's executrix had failed to accord to the mortgagors that full measure of good conduct and fair deal-

ing, in exercising the power of sale under the mortgage, that she was in good conscience, as their *quasi* trustee, bound to do; and that a serious detriment to them had probably resulted.

It appeared from the transcript in that case that there was open on the land records at the time of the foreclosure sale another mortgage of the mortgagor's real estate which was made by a predecessor in title of the complainant mortgagors and which was prior to the mortgage that was being foreclosed; that no bidders appeared at the sale except the mortgagee's son who made a merely nominal bid of $100 and received a mortgagee's deed of the property, which was duly recorded in the land records; that the prior mortgage, held by the same mortgagee, had been satisfied and therefore was known to the mortgagee's executrix to be no longer a valid incumbrance, although it appeared to be so from the land records; that such mortgage was in the possession of the executrix; and that no other facts appeared which would lead us to believe that the mortgagors knew of this prior mortgage or that they had it within their power at any time before the sale to correct the land records so that the true state of their title would be disclosed to prospective bidders examining such records.

On these facts we declared the mortgagee's sale null and void on the ground that a cautious person who contemplated bidding at the sale would very probably have been deterred from doing so by examining the land records and noting therefrom that there was a prior undischarged mortgage of record. In other words, while we did not expressly so state, it was implied that the lack of bidders at the sale and the merely nominal price received at the sale were probably due to the inequitable conduct of the mortgagee's executrix in permitting the prior mortgage, which she knew had been satisfied, to remain on the land records undischarged. We accordingly granted the relief prayed for by the mortgagors.

That the situation of the mortgagors relative to the first foreclosure sale was very different from what it was at the time of the second foreclosure sale, now under consideration, and also that the circumstances surrounding the second sale itself were different from those surrounding the first one, will appear from the following: The second sale was held on April 2, 1938, and attracted "quite a few people" according to the testimony of the auctioneer who conducted the sale. Three separate *bona fide* bids were received. Only one bid was received at the first sale. Respondent Israel B. Brayton made the first bid, not merely a nominal one as at the first sale, but a substantial one of $400. Another bidder raised this bid to $500, whereupon respondent Brayton made a third bid of $700 at which figure the premises were sold to him. The notice of the second sale had been duly advertised on March 11, 1938. On the day before, March 10, 1938, the mortgagee's executrix had discharged of record the prior mortgage of $5000 which had caused the voidance of the first sale.

Our opinion, in which we held the first foreclosure sale void, was filed on February 17, 1938. However, it was not until March 17, 1938 that a decree embodying the relief prayed for by the complainant mortgagors was presented to this court for approval for entry in the superior court, and it was not until March 21, 1938 that such decree was actually entered in the superior court. In the meantime a second notice of the second foreclosure sale was advertised on March 18, 1938. Two other notices of such sale were duly advertised after March 21, 1938, the day on which the decree voiding the first foreclosure sale was entered in the superior court. For some reason unaccounted for by these complainant mortgagors in the instant cause, who were the complainants also in the former case and who had obtained the decree voiding the former sale, such decree was never recorded in the land records of the city of Warwick. Thus those records appeared to show at the time of the second fore-

closure sale that the title to the mortgagors' real estate was in Israel B. Brayton by virtue of the mortgagee's deed to him under the first foreclosure sale.

Solely on these facts the complainants contended here, as they successfully contended below, that the instant cause was ruled by the former case of *Hanley* v. *Brayton*, 60 R. I. 101. Upon careful consideration we think it is clear that the circumstances surrounding each sale, while similar in some respects, are fundamentally different in other respects and to such an extent as not to justify a court of equity in interfering with a sale under a power which has been exercised in every particular according to law.

Inferentially the complainants, in their bill, admit that the mortgagee's executrix exercised the power according to its letter but in paragraph 22 thereof they allege that the sale was not fair and just to them and that "equitable considerations", without specifying what they are, "require that such sale and the deed of the mortgaged property to the respondent Israel B. Brayton be set aside and declared null and void". However, on this allegation taken in connection with the three next preceding paragraphs of their bill, the complainants argued that it was inequitable for the mortgagee's executrix to commence proceedings for the second foreclosure sale before entry of the decree avoiding the first sale and also before such decree was recorded in the land records. They contended that, in the absence of such a record of the decree, the mortgagee's deed to Israel B. Brayton under the first sale was a cloud on their title that tended to deter prospective bidders from bidding at the second sale.

Complainants offered no evidence in support of such contention. Whether or not any persons were actually deterred thereby from bidding we do not know. Whether or not if there had been any more bidders at the sale there would have been a reasonable probability of a higher price being obtained we are likewise not informed. The transcript is

barren of any evidence as to the reasonably fair value of the mortgaged premises and there is no evidence that the sum received is so grossly inadequate as to shock the conscience of the court. In a word, neither the bill nor the evidence furnishes any grounds upon which this court might rely for the exercise of its equitable jurisdiction to set aside this sale, except upon the view that, in equity and good conscience, it was the duty of the respondent executrix to wait until the decree of the superior court was entered before commencing a second foreclosure sale and then not to proceed to foreclose until she had recorded such decree in the land records if the complainants neglected to do so.

Assuming that the bill states a case, and of this we have grave doubts, the complainants failed to prove their case based on the sworn allegations of their bill. If the state of the record title of the complainant mortgagors was calculated to deter bidders, the correction of that situation was within their power. They had obtained a decree voiding the mortgagee's deed to Israel B. Brayton and had they been diligent they could have caused such decree to be recorded with the land records of the city of Warwick in ample time to protect their interests at any future sale. Not only did they not do this after the decree was entered in the superior court but they neglected to record such decree down to the very date of the second foreclosure sale. As for the prompt entry of the decree after our decision on February 17, 1938, it was the duty of the complainants as the prevailing parties, under Rule 42 of the equity rules of the superior court, to attend to the drafting and entry of a proper decree. Although our opinion directed that a decree be presented for our approval on March 7, 1938, this was not done until March 17, 1938; and not until March 21, 1938 did complainants actually enter such decree in the superior court.

We are not informed what caused this delay. However, in any event the mere pendency of the cause in court would not of itself justify the setting aside of the second foreclosure

sale. *Sheasgreen Holding Co.* v. *Dworsky*, 182 Minn. 142; *Holton Park Co.* v. *Gary*, 133 Md. 509, 520, 105 A. 751, 755. In the latter case the court said "it is sufficient to say that there is no evidence in the record to suggest that the fact that the company's petition in the case in which the trust estate was being administered was pending at the time of the sale in any manner affected the sale of the property. In the absence of some evidence tending to show that a probable bidder refrained from bidding because of the pendency of said proceedings the Court would not be justified in concluding that but for said proceedings the property would have been sold for a higher price."

In order to prevail on their bill, the complainants here had to do something more than show the state of the record pertaining to their title. If they rely on inadequacy of price, as they seem to do, it was their duty to show that the sale itself was consummated at a grossly inadequate price, and that such gross inadequacy could reasonably be attributed to the mortgagee's executrix because of the manner in which she conducted the sale. Mere inadequacy of price cannot of itself impeach the sale,—*Woolley* v. *Tougas*, 61 R. I. 434, 1 A. 2d. 92—although it is true that in case of a very great disparity in this respect, courts will be astute in extracting from the facts of the case sufficient grounds to justify them in annulling the sale by reason of mistake, surprise, inadvertence or unfair conduct. *Kres* v. *Hornstein*, 161 Md. 1; Tiffany on Real Property (2d. ed.) 2724.

This court appears to have acted on this principle in *McKenney* v. *Burney*, 49 R. I. 423 and *Rosenfeld* v. *Wunsch*, 45 R. I. 48. In both of those cases the court found from the evidence sufficient grounds coupled with inadequacy of price to justify it in setting aside the sale as unjust and inequitable. But there can be no question that mere gross inadequacy in price is not of itself sufficient to avoid a sale. Proof of fraud or at least unfairness, accounting in all probability for such inadequacy, is necessary. *McKenney* v. *Burney*,

*supra; Beacon Hill Land Co.* v. *Bowen,* 33 R. I. 404. See also *Stevens* v. *Plumas Eureka Annex Mining Co.,* 2 Cal. (2d.) 493. There is nothing of that nature shown here.

In the instant cause the mortgagors have been at no pains to show wherein the price of $700 received for the mortgaged premises at the sale was the reasonable and probable result of the failure of more bidders to appear at the sale because of the state of the record title of the mortgagors in the records of land evidence in the city of Warwick. Neither have they attempted to show the reasonably fair value of the property at the time of the sale and thus afford us some means of determining whether or not there was in fact gross inadequacy in the price of $700. All that we know from the sworn allegations of their bill and the respondents' evidence is that complainants purchased this property in 1927 for $500 plus a purchase money mortgage of $5000; that from January 25, 1932 complainants failed to pay any interest or principal on this mortgage or the taxes regularly assessed against it; and that they were in default in this respect when they brought the instant bill of complaint, are still in default, and have made no tender or offer of payment of either these arrears of taxes and interest or the principal of the mortgage.

Under such circumstances complainants are hardly in a position to ask for equity when they themselves utterly neglect to do equity, and, moreover, they furnish no basis for us to determine whether or not the price received at the second foreclosure sale is grossly inadequate, taking into consideration the accumulations of interest and unpaid taxes and the long period of time which has elapsed since the property was sold for $500 plus a purchase money mortgage of $5000. In other words, the complainants have failed to furnish the evidence upon which to apply the equitable doctrine that the mortgagee ordinarily should not have the whole debt and the whole estate. And they have shown no

ground whatever why the respondent Israel B. Brayton should be deprived of his title.

For the reasons stated, we are of the opinion that the superior court was in error in holding that the mere state of the record title of the mortgagors on the land records of the city of Warwick at the time of this sale was sufficient, on the authority of *Hanley* v. *Brayton, supra,* to warrant a decree voiding such sale. We are of the further opinion, after considering the complainants' sworn bill and the evidence adduced at the hearing, that the complainants have failed to show any equity that would otherwise warrant us in sustaining the decree of the superior court.

The appeal of the respondents is therefore sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with direction to enter a final decree dismissing the bill of complaint.

*George Triedman,* for complainants.

*Fergus J. McOsker,* for respondents.