266 A.2d 56.

NATALIE M. ANDERSON *vs.* ROBERT ANDERSON *et al.*

JUNE 3, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. In this civil action Natalie Anderson asked the Superior Court to cancel and void a mortgage foreclosure sale on residential property owned jointly by her and her husband. She also asked that the mortgagee be enjoined from delivering, and the successful bidders from accepting, a deed of that property. The defendants are Robert, her husband; the Old Stone Savings Bank, the foreclosing mortgagee which at foreclosure time was owed $18,683.58 on account of principal and four overdue monthly installments of $137.58 each; and Jordan Kirshenbaum and Harold Smith who bid the property in for $19,-851 at the foreclosure sale. Judgment against Robert was by default; and after a nonjury trial a judgment was entered granting Natalie the right to redeem the property, and, subject to her exercising that right, voiding the foreclosure sale and enjoining the bank from delivering a deed to the purchasers. The purchasers appealed.

In argument before us the bank assumed the position of a stakeholder. While at all times insisting that the foreclosure procedures conformed both to the laws of this state and to the power of sale contained in the mortgage deed, it nonetheless professed its readiness to convey the property as it may be directed.

The property involved in the dispute is the marital domicile of the Andersons. A Family Court decree entered in a matrimonial dispute involving the Anderson family gave Natalie exclusive use of the property and directed Robert to pay the insurance and taxes on the property as well as the monthly mortgage payments. When, without justification or excuse, Robert failed to make the mortgage payments, the bank commenced foreclosure proceedings. The first notice advertising the foreclosure sale was published on November 1, 1968, and it fixed 11:00 a. m. on November 25, 1968, as the time of the sale.

When Natalie learned about the pending foreclosure sale

she applied to the Family Court to have her husband adjudged in contempt. Thereupon, Robert agreed to pay $700 on the mortgage defaults in order to forestall the scheduled foreclosure sale, but the morning on which the sale was to take place arrived without any payment having been made. By then, however, Robert had concluded arrangements for obtaining the funds required to cure the defaults, and it was the knowledge of the availability of those funds which prompted Natalie's attorney to telephone the bank's counsel at about 9:15 that morning. What the attorneys said then and later, when the call was returned, is unclear.

The bank's counsel was positive that during the first conversation Natalie's attorney advised that money was available to pay the arrearages on the mortgage and spoke of the possibility of postponing the sale; he was equally positive that a postponement was not asked for when he returned the call about half an hour later and told Natalie's attorney that nobody had communicated with the bank about making a payment on the mortgage and that he was on his way to the foreclosure sale.

Natalie's attorney had a different version. He insisted that the first conversation was limited to a discussion of the arrangements which had been made for Robert to pay what was overdue on the mortgage; he also said that the request for a postponement was not made until after he had been informed during the second conversation that Robert had not communicated with the bank. The bank's attorney, he said, then agreed to pass that request on to his client and to let him know whether or not the sale would be continued.

In any event, there were no other pre-sale communications, and Natalie's attorney, relying upon his version of the two telephone conversations, took no further steps to protect her interests. The sale took place and the property, which had an agreed market value of $33,000, was

struck down to the purchasers for $19,851. The only other bidder at the sale was the bank. Its final bid was $19,850, which was the balance then due on the mortgage indebtedness plus foreclosure expenses.

The trial justice's pertinent findings[1] were that the bid price was grossly inadequate and that Natalie had not protected her interests at the foreclosure sale because of a mistaken and justifiable belief that all overdue sums on the mortgage indebtedness would be paid and the foreclosure proceedings postponed or abandoned. It was upon these findings, rather than upon any suggestion that the sale was not duly advertised or properly conducted, that the trial justice invalidated the foreclosure sale, and the question for us is the validity of his conclusion.

Well-settled legal principles control the determination of what circumstances and conditions justify the impeachment of a foreclosure sale. They recognize that it is a delicate matter to interfere with a sale when the mortgagee in foreclosing has acted within the letter of his power; *Holland* v. *Citizens Savings Bank,* 16 R. I. 734, 738, 19 A. 654, 656; *Nichols* v. *Flagg,* 24 R. I. 30, 31, 51 A. 1039, 1040; that a purchaser at a foreclosure sale has rights which merit protection; *Rosenfeld* v. *Wunsch,* 45 R. I. 48, 53, 119 A. 658, 660; *McKenney* v. *Burney,* 49 R. I. 423, 425, 143 A. 778; and that a realistic awareness of what occurs in the marketplace suggests that land which is sold at auction under a power of sale will seldom produce a

---

[1]The trial justice also commented that the foreclosure notice failed to include either a statement that the title to the mortgaged premises was insurable, or a street and lot number, as distinguished from a metes and bounds description, of the premises to be sold. Those failures, he found, might have dampened the sale and discouraged prospective bidders from attending. We ignore these findings, not only because they were speculative and without any evidentiary foundation, but also because in our judgment they were peripheral, rather than basic or essential, to his ultimate determination.

price as high as its real value. *Beacon Hill Land Co.* v. *Bowen,* 33 R. I. 404, 412, 82 A. 81, 84-85. They recognize also that neither the delicacy of the proceedings nor a purchaser's right to enjoy the benefits of his bargain should be allowed to override strong equities in favor of the owner of an equity of redemption. *Rosenfeld* v. *Wunsch, supra* at 53, 119 A. at 660, *McKenney* v. *Burney, supra* at 425, 143 A. at 778. In deciding whether there are such equities, any disparity between what was paid for the property and its fair market value will, of course, be an important consideration. And while inadequacy of price alone will not suffice to invalidate a sale, *Woolley* v. *Tougas,* 61 R. I. 434, 1 A.2d 92; *Galvin* v. *Newton,* 19 R. I. 176, 36 A. 3; *Nichols* v. *Flagg, supra; Babcock* v. *Wells,* 25 R. I. 30, 54 A. 599; *Beacon Hill Land Co.* v. *Bowen, supra;* it will be taken into account — particularly if the disparity is so great that it shocks the conscience, *Hanley* v. *Brayton,* 66 R. I. 87, 92, 17 A.2d 857, 859, — together with the other attendant circumstances in ascertaining whether the sale was fair or whether instead it was so unjust and inequitable as to justify its being set aside. *Woolley* v. *Tougas, supra; Rosenfeld* v. *Wunsch, supra; McKenney* v. *Burney, supra.* Moreover, whenever the disparity is great, courts will be astute to extract from the facts of the case sufficient grounds to justify an annulment of the sale by reason of mistake, surprise, inadvertence or unfair conduct. *Hanley* v. *Brayton, supra* at 93, 17 A.2d at 860.

Our problem, however, is not to verbalize the legal principles which may be extracted from the decided cases, but to ascertain whether the facts and circumstances of this particular case fall within the legal framework which those principles supply. In attempting to fit this sale within that framework, Natalie does not suggest that the foreclosure terms were improperly advertised or that they were inaccurately stated by the auctioneer; or that the bank

said or did anything prior to or at the sale the effect of which was to chill the bidding or to deter bidders; or that under some other conditions the property would have sold at a higher price; or that the bank was guilty of fraud, bad faith or unfair conduct. In short, instead of charging fraud, unfairness, collusion, irregularity, or noncompliance either with the pertinent statutes or the terms of the power of sale, she depends solely upon what she claims was a grossly inadequate bid price and upon her attorney's failure to protect her interests at the foreclosure sale because of his mistaken belief that it would not be held without prior notification to him.

In support of her position Natalie relies on *Rosenfeld* v. *Wunsch, supra.* In that case a mortgagor, upon learning of the impending foreclosure of his property, brought suit alleging that she was not in default on her mortgage obligations and asking that the foreclosure sale be enjoined. She obtained an *ex parte* order restraining the sale, and a citation giving notice of that order was promptly delivered to the sheriff for service. It was not served, however, until after the property had been offered for sale subject to a prior mortgage of $2,500 and had been bid in for $2,000 by a clerk in the mortgagee's office who was the only bidder present at the sale. The complaint was then amended so that it became a bill in equity to redeem, and the relevant allegations included the averment that the owner's attorney had not otherwise protected his client's interest because he mistakenly believed that the citation containing notice of the restraining order had been served prior to the time when the sale had been scheduled to take place. The court found that the property was worth "very much in excess of $6,000," that the sale price was grossly inadequate, that the attorney's mistake was excusable in the circumstances, and that the equities in favor of the prop-

erty owner overrode the purchaser's right to the benefits of his bargain. It granted redemption.

Obviously, the fact patterns of this case and *Rosenfeld* are not identical. The common thread which runs through both, however, is that the owner was unrepresented at the sale because of a mistaken belief that the sale would not take place. In *Rosenfeld* that mistake was induced by the attorney's erroneous supposition that a citation containing notice of an order restraining the foreclosure sale had been served; here, the misbelief resulted from an apparent misunderstanding between two attorneys, each of whose reputation and integrity are impeccable. The equities here appeal at least as strongly as did those in the *Rosenfeld* case, and they justify excusing the mistake.

The purchasers, conceding excusable mistake arguendo, contend, nonetheless, that such a mistake alone would not suffice to impeach the sale unless accompanied by proof that the bid or sale price was grossly inadequate. And on the grossly inadequate issue they point to cases[2] where bids at forced sales of 50% or less of real value were found not to be grossly inadequate, and they conclude, therefore, that their bid price in this case of 61.5% of the property's agreed fair market value should be held adequate.

A reading of the cases they cite discloses that in each instance the application for relief was premised solely upon an alleged inadequacy of the price bid at the foreclosure sale. In that kind of fact situation the Massachusetts court said that disparity alone would not be sufficient to invalidate a sale in the absence of a showing of bad faith

---

[2]*Cockrell* v. *Taylor*, 347 Mo. 1, 12, 145 S. W.2d 416, 422 (one-fifth of value) : *Trotter* v. *Carter*, 353 Mo. 708, 714-15, 183 S. W.2d 898, 902 (one-third of value) ; *Jackson* v. *Fuller*, 66 App. D.C. 239, 241, 85 F.2d 816, 818 (D.C. Cir.), *cert. denied*, 299 U. S. 608. 57 S. Ct. 236, 81 L. Ed. 418 (approximately two-fifths of value) ; *Ross* v. *Vadeboncoeur*, 298 Mass. 523, 11 N. E.2d 430 (approximately one-half of value) ; *Richardson* v. *Kent*, (Tex. Civ. App.) 47 S. W.2d 420, 425 (approximately one-half of value).

in the exercise of the power of sale. In the other cases the courts considered the bid price to ascertain whether it fell so far short of real value that it shocked the moral senses and thereby raised a presumption of fraud. While in each instance the disparity failed to shock the conscience and therefore did not justify invalidating the sale, those cases are not precedential on whether the sale would have been impeached if, in addition to an inadequate price, there had also been a showing of fraud, unfair dealing or some other overriding circumstances. Obviously, these authorities are clearly distinguishable from this case, for here Natalie relied not alone upon the inadequacy of the price bid at the sale, but also upon excusable mistake. It was that mistake coupled with the inadequate price which prompted the trial justice to set the sale aside as unjust and inequitable. In the circumstances we find no error.

Natalie, if she is to receive the protection of equity, must do equity, and the relief we grant is dependent upon her protecting a blameless mortgagee-bank and faultless purchasers against loss, and upon making them whole. *McKenney v. Burney, supra* at 425, 143 A. at 779. The bank, therefore, is entitled to receive as a condition of redemption whatever may be due it on account of mortgage principal, interest and foreclosure expenses, plus interest thereon at the prevailing mortgage interest rate.

The record shows that the purchasers have incurred substantial expenses. They have paid a portion of the bid price, and in addition the Superior Court directed them pending a final determination of this proceeding: (1) to place in escrow $19,351, that sum being the balance due on the purchase price, and (2) to pay the real estate taxes assessed against the premises. They may also have made additional expenditures for the protection of the property. As a condition of redemption they are entitled to a refund of the escrowed funds, to be reimbursed for other expended

funds, and to receive interest thereon. The legal rate of interest in this state is six per cent. G. L. 1956, §6-26-1. This is hardly a realistic rate in today's money market, and for that reason the interest on the sums from time to time paid out by the purchasers should be computed at one per cent above whatever may have been the effective prime rate.

Because the parties in arguing the case to us considered only the merits of the controversy, it may be that there are matters in addition to those to which we have adverted which should be incorporated in the final judgment if equity is to be done. Our references to specific items should not, therefore, be deemed as barring inclusion of those other matters in the judgment.

The parties may present to us in chambers for our approval and for entry in the Superior Court a form of judgment consistent with this opinion.

*Abedon, Michaelson, Stanzler & Biener, Julius C. Michaelson, Richard A. Skolnik,* for plaintiff.

*Tillinghast, Collins & Tanner, Peter J. McGinn,* for Old Stone Savings Bank; *John A. Mutter,* for defendants Jordan Kirshenbaum and Harold Smith.