279 A.2d 422.
NATALIE M. ANDERSON *vs.* ROBERT ANDERSON.

JULY 22, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. On July 24, 1968, Natalie M. Anderson filed a petition in the Family Court seeking an absolute divorce on the grounds of extreme cruelty and gross misbehavior. This petition was accompanied by a motion for temporary allowances for herself, two minor children, and for other miscellaneous relief. Hearings on this motion were held on August 1, 2 and 3, 1968, and on August 8, 1968, a decree was entered giving the petitioner exclusive possession of the marital domicile, ordering the respondent to vacate said domicile, and from molesting, threatening and annoying the petitioner. No provisions were made by said decree for either allowances or counsel fees, but the decree did provide for further hearing on September 9, 1968. Meanwhile, the respondent agreed to pay petitioner $35 weekly for her support and that of the minor children. This agreement appears to have been oral and further appears to have been made known to and approved by the Family Court justice.

On August 30, 1968, petitioner filed a motion to adjudge respondent in contempt of the decree entered August 8th. Hearing thereon was continued from time to time as was further hearing on petitioner's motion for allowances, and counsel, and witness fees. The motion to adjudge in contempt alleged that respondent had not vacated the marital domicile as ordered, and, in further defiance of the August 8th decree, was continually annoying petitioner.

On October 8, 1968, petitioner filed a second motion to adjudge in contempt which motion supplemented that filed on August 30, 1968, no hearing having been held thereon. This second motion averred that respondent continued to

be in contempt of the August 8, 1968 decree as well as to be in noncompliance with the agreement to pay petitioner $35 a week as aforesaid. Wherefore, it prayed, that respondent be adjudged in contempt and ordered to purge himself thereof by paying that which was due as well as paying counsel fees and expenses for the prosecution of the contempt motions.

Although no transcript thereof appears in the record, a hearing was apparently held some time prior to October 15, 1968, because on this latter date a decree was entered by the terms of which the injunctive relief accorded petitioner in the decree of August 8, 1968, was restated in more specific terms, and respondent was ordered to pay to petitioner accumulated arrearages. He was also ordered to pay into the Family Court the sum of $45 weekly for the support of the minor children; to make the mortgage payments on the marital domicile and to pay $450 attorney's fees for prosecution of petitioner's motion for support. He was not, however, adjudged to be in contempt. It appears from the record that respondent failed to comply, at least completely, with the orders contained in the decree entered October 15, 1968. Consequently, on November 8, 1968, petitioner filed a further motion to adjudge respondent in contempt. A hearing was held thereon and on November 27, 1968, a decree was entered adjudging respondent in contempt of the order to make monthly mortgage payments on the marital domicile. The question of whether respondent was otherwise in contempt of the October 15, 1968 decree was left open. By the terms of the decree accordingly entered on November 27, 1968, respondent was ordered as a condition of purging himself to immediately pay all arrearages of mortgage payments and an attorney's fee of $125 for prosecution of the November 8, 1968 motion.

Again, no transcript of the hearing leading to the entry of the November 27th decree is in the record. From the

language of the decree, however, it would appear that sometime prior to the entry of the decree, the mortgagee had taken steps leading to a foreclosure sale.

In any event, a foreclosure sale was held, the mortgage foreclosed and petitioner commenced an action in Superior Court to nullify and cancel the mortgagee's sale. See *Anderson* v. *Anderson,* 107 R. I. 202, 266 A.2d 56.

As a consequence, petitioner on December 6, 1968, filed a motion in the Family Court setting forth that the mortgage had been foreclosed as aforesaid, and as a precaution prayed that respondent be enjoined, ex parte, from selling, mortgaging or otherwise transferring his interest in a certain corporation, specifically Windsor Builders, Inc., as well as his right, title and interest in and to a boat named the "Sternbild." On December 9, 1968, an order was entered granting the ex parte motion. On the following day, petitioner filed another motion to adjudge respondent in contempt of the October 15, 1968 and November 27, 1968 decrees. The respondent on December 12, 1968, filed a motion seeking to have the decree of November 27, 1968 vacated. It also sought to vacate the ex parte order entered on December 9, 1968.

There are no transcripts of any hearings held in connection with either petitioner's December 10th motion to adjudge in contempt nor respondent's motion of December 12 to vacate as aforesaid. Neither do the jacket entries disclose any such hearings. However, there is a jacket entry for December 18, 1968, stating simply, "Decree modified by agreement."

Notwithstanding this, on January 2, 1969, an order was entered in the Family Court which recites that hearing had been had on petitioner's December 10 motion to adjudge respondent in contempt. Be that as it may, this order of January 2, 1969, states that respondent had been incarcerated at the Adult Correctional Institutions from

December 13, 1968 to December 16, 1968, by reason of his contemptuous conduct. It indicates that the ex parte order was so broad as to prevent respondent from meeting his obligations, and was modified so as to correct this. However, respondent was ordered to pay $200 in arrearages forthwith and thereafter to make the $45 weekly payments for support directly to the Family Court as previously ordered. The order then continues all other matters to January 20, 1969.

Notwithstanding this latter assignment, on January 13, 1969, the petition for absolute divorce was assigned to January 23, 1969, for hearing on the merits. Such a hearing did commence on January 23, 1969, testimony was received and the cause continued for further hearing. The record indicates that there were a total of five days of testimony concluding on April 8, 1969. It resulted in the entry of a decree on June 9, 1969, granting petitioner an absolute divorce on the grounds of extreme cruelty.

Meanwhile on February 3, 1969, petitioner had again moved to have respondent adjudged in contempt for failure to comply with the orders and decrees previously entered which ordered weekly payments to the Family Court for support as aforesaid, as well as the payment of attorney's fees. As previously noted, two such orders had been entered whereby respondent was permitted by compliance therewith to purge himself of the contempts previously adjudged. A hearing was held on this motion and on February 19, 1969, a decree was entered further adjudging respondent to be in contempt. This decree found, inter alia, that respondent was in arrears of support payments in the amount of $395 and an attorney's fee of $450. It ordered respondent to pay such arrearages and an additional counsel fee of $100 by February 21, 1969, or, failing to do so, appear in the Family Court for sentencing. It would appear that respondent paid $200 of the total required to

be paid by the court, but otherwise failed to purge himself. Consequently, a hearing was held on March 7, 1969, and a further decree was entered March 12, 1969. It recites respondent's continued recalcitrance, the wilfullness of his continued contempt, and makes clear that except for the fact that it would cut off respondent's earning capacity, the Family Court justice would have imposed the sanction of incarceration at the Adult Correctional Institutions.

To avoid this, the Family Court justice permitted respondent to purge himself by signing the necessary papers for the sale of respondent's boat "Sternbild" with the proceeds of such sale being placed in the registry of the Family Court. Absent such compliance, the matter would be further heard, and a decree entered March 12, 1969, so provided. From this decree respondent claimed the first of seven appeals to this court from decrees and orders of the Family Court.

The respondent apparently did not comply and petitioner moved for further hearing which was set down by the court for May 2, 1969. On that day, respondent failed to appear and the court ordered a body attachment to issue. The respondent was produced in the Family Court on May 8, 1969, again adjudged to be in contempt and ordered confined to the Adult Correctional Institutions until 10 A. M. May 12, 1969. At a hearing held on this latter date, respondent was given until June 12, 1969, to purge himself by paying the $410 and to June 26 to pay arrearages on the home. The record further indicates that this order of May 12 was vacated and the matter assigned to May 28, 1969. On this latter date, an order was entered adjudging respondent in contempt for nonpayment of the $410. This order gave respondent until June 1, 1969, to pay that amount.

On June 9, 1969, a decree was entered granting petitioner an absolute divorce and on the same day an order was entered which after reciting in specific detail respondent's

blatant and continuous failure to comply with previous orders of the Family Court, including that which led to the foreclosure of the marital domicile, the litigation in connection therewith, and the expense to petitioner resulting therefrom, found that respondent was indebted to petitioner and her attorney in the sum of $4,304.69. Of this amount $1,125 was owing to petitioner's attorney for services rendered in connection with the foreclosure sale and the subsequent Superior Court proceedings, as well as for services in the Family Court, and as a condition of purging himself, respondent was given until September 30, 1969, to pay this sum to petitioner's attorney. As a further condition to purging himself, respondent was given until the filing of the decision of this court in *Anderson* v. *Anderson, supra,* to pay to petitioner the balance of the $4,304.69. These conditions upon which respondent would be permitted to purge himself, however, were themselves conditioned on respondent's continuing to make the weekly support payments ordered by the decree of October 11, 1968. In the event that respondent failed to make such weekly payments, pending the times fixed for the payment of $4,304.69, such grace periods would cease to be in effect, in which case the Family Court would further hear the matter on punishment for contempt.

On June 17, 1969, respondent filed a claim of appeal and the reasons therefor from both the divorce decree and order of June 9, 1969.

Meanwhile, he apparently did not make the weekly payments and a further motion to adjudge him in contempt was heard on June 25, 1969, June 30, 1969, and July 3, 1969. On this latter date, a decree was entered ordering respondent, *inter alia,* to sell certain real estate owned by him and hold the proceeds pending further direction of the court. The cause was otherwise continued to July 18, 1969. The record does not indicate what, if anything, happened on that

date, but on July 22, 1969, a decree was entered ordering respondent, *inter alia,* to make partial payment of arrearages out of his weekly pay check. All other questions raised by the motion were continued to September 1969.

On this latter date the cause was continued to September 5, 1969, at which time the matters left open by the decree of July 22, 1969, were considered. This hearing resulted in the entry of a decree on September 22 which in pertinent part found respondent in wilfull contempt on several grounds and ordered him confined to the Adult Correctional Institutions, "until such time as he pays the sum of $1085.00." From this decree respondent appealed to this court.

However, from a hearing held on September 26, a transcript of which is in the record, it appears that on September 5th, respondent escaped from the custody of the officer assigned to transport him to the Adult Correctional Institutions as aforesaid. His escape, from respondent's apparent point of view, was thorough in that his whereabouts are still unknown.

In any event, at this September 26th hearing, petitioner opposed a motion made by respondent's counsel whereby the latter sought Family Court's permission to sell ten of 55 acres of land owned by Windsor Builders, Inc. Permission was necessitated by the modified ex parte order restraining respondent from disposing of his interests in Windsor Builders, Inc., owner of the 55 acres in question.

Moreover, from the transcript of the September 26th hearing, it appears that by a decree of July 3, 1969, modifying the ex parte order, petitioner's counsel had been authorized to arrange the sale of Windsor Builders' land at a price to be approved by the court and the proceeds to be held pending further direction by the court. This decree is unappealed.

Consequently, in addition to opposing respondent's motion for permission to sell ten acres, petitioner's counsel, advising the court that he had a firm offer for purchase of the 55 acres at $550 an acre sought authority from the court to accept such offer. Stressing respondent's continuing willful contempt and flight, the Family Court justice denied respondent's motion and approved petitioner's recommendations.

Accordingly an order was entered on October 17, 1969, denying respondent's motion for permission to sell ten acres and directing petitioner's counsel to accept said offer and take the necessary steps to effectuate the sale. This order further provided:

> "After the sale of the real estate is concluded, Petitioner, through her counsel, shall take whatever steps are necessary to transfer or cause to be transferred to the registry of this Court any and all funds that may be found to belong to the Respondent."

> "Immediately upon the receipt of these funds, the Court Administrator shall hold the funds in a special account to be known as the 'Robert Anderson Account.' Immediately thereafter, the Court Administrator shall pay to the Petitioner the sum of $1,085.00, plus the sum of $45.00 per week, commencing on September 12, 1969, and continuing weekly thereafter until further order of this Court."

Continuing, the order provided for payment out of the funds deposited with the court, the total sum of $2,625 to petitioner's counsel previously awarded.

From said order respondent appealed to this court, principally on the grounds that the land was the property of Windsor Builders, Inc. which corporation was not a party.

Also entered on October 17, 1969, but not appealed was an order authorizing petitioner's counsel to obtain an appraisal and to solicit bids for the sale of respondent's boat with directions to report progress to the court on November 7 next.

Motions made by petitioner's counsel with regard to the sale of the land, the boat, and further counsel fees, were continued for hearing to December 15, 1969. From the transcript of that hearing which is in the record, it appears that respondent had communicated with his attorney, been advised of the pending hearing, and strongly urged to attend and seek permission to purge himself.

The respondent ignored this advice and was not present, but was represented by counsel. It was developed at this hearing that, pursuant to the order of October 17th, petitioner's counsel had obtained a qualified appraisal of $6,000 for the boat and an offer for the same of $7,600. Counsel for petitioner also furnished a memorandum of the value of his services performed subsequent to those for which $2,625 had been awarded.

The Family Court justice approved the appraisal and authorized the petitioner to execute a bill of sale for the boat at the price offered. He also found petitioner's counsel services to be worth $4,750. On the same day orders to this effect were entered and respondent seasonably appealed.

Whether the sale of the boat "Sternbild" was effected does not appear from the record before us, but, in any event, on January 19, 1970, petitioner filed a motion in the Family Court for the appointment of a receiver to marshal all of the assets of respondent having a situs in Rhode Island. This motion was heard on January 30, 1970, but again, as has so often been the case, there is no transcript in the record. Nevertheless an order entered January 30, 1970, contains the following:

"* * * it appearing that the Respondent has been in willful contempt of this court on numerous occasions and has fled from the custody of the Sheriff of the County of Providence and that the Respondent's whereabouts are unknown to the Petitioner, and it is

necessary for the Petitioner to have funds available for the support of herself and minor children."

This order then named a receiver

"* * * over the assets and estate of Robert Anderson as are available within the state of Rhode Island;

That the receiver shall initiate such proceedings as are necessary to marshal the assets of the Respondent and to have them deposited with the court administrator of this court so that disposition of the funds can be made pursuant to prior orders of this court."

From this order, respondent also appealed, and on June 18, 1970, all the papers heretofore referred to in the cause were certified to this court. We say "heretofore referred to" advisedly because as we have repeatedly stated what purports to be the full record is considerably less than comprehensive.

Nevertheless, we have voluminously capsuled from jacket entries, motions, orders, decrees and such transcripts as have been furnished, the travel and history of this litigation to the end that respondent's repeated and continuing disregard and disdain for the due process that he seeks to invoke here may be evident. We have been so motivated because on the day following the docketing of all appeals in this court, petitioner moved to dismiss the same on the ground that respondent's brazenly wilfull contempt justified this court in refusing to exercise its appellate jurisdiction.

We denied the motion at that time in light of our lack of familiarity with the record. However, after the appeals had been heard on oral arguments and briefs, and respondent's utter and literal contempt for the judicial process made clear, we concluded that reconsideration of petitioner's motion to dismiss was in order.

In *Molinaro* v. *New Jersey,* filed January 19, 1970, 396 U.S. 365, 90 S. Ct. 498, 24 L.Ed.2d 586, the United States Supreme Court dismissed Molinaro's appeal from a judg-

ment of the Supreme Court of New Jersey affirming appellant's conviction of a criminal offense. It did so for the reason that Molinaro failed to surrender himself to state authorities and had the status of a fugitive. So holding, the United States Supreme Court cited with approval, among other cases, *National Union of Marine Cooks and Stewards* v. *Arnold,* 348 U. S. 37, 75 S.Ct. 92, 99 L. Ed. 46. There, in a discursive discussion, the United States Supreme Court held that it is not a denial of due process for an appellate state court to dismiss the appeal of an appellant who, subsequent to his day in court at the trial level, willfully flouts the judicial process. Consequently, if not unwarranted as a denial of due process, an appellate court's decision to dismiss an appeal under the circumstances stated, is an exercise of the inherent power to enforce respect for judicial process.

It is our judgment, therefore, that further consideration of the respondent's appeals from the several orders and decrees heretofore delineated should be deferred until November 1, 1971, by which date the respondent shall either furnish to this court satisfactory evidence of having personally appeared in the Family Court and made such purgation as that court shall decree, or submit to dismissal of the pending appeals.

*Abedon, Michaelson, Stanzler & Biener, Milton Stanzler,* for petitioner.

*Kirshenbaum & Kirshenbaum, Alfred Factor,* for respondent.