Louis **CEDRONE** et al.

v.

**WARWICK FEDERAL SAVINGS AND LOAN ASSOCIATION.**

81–379–Appeal.

Supreme Court of Rhode Island.

May 12, 1983.

John F. Cicilline, Providence, for plaintiffs.

Peter J. McGinn, Vivian Tseng, Providence, for defendant.

## OPINION

MURRAY, Justice.

This case is before the court on appeal from a Superior Court judgment that denied the plaintiff's request to have set aside certain mortgage foreclosures on land he owned.

On January 15, 1974, plaintiff Louis Guiliano and his wife, Roseann Guiliano, filed a complaint that alleged, among other things, that they were owners of land in Cumber-

land, Rhode Island, that defendant Warwick Federal Savings and Loan Association held mortgages on the land, and that it had commenced and threatened unwarranted foreclosures. The plaintiff and his wife requested temporary and permanent injunctive relief from the foreclosures, ascertainment of amounts due under the mortgages, and damages for harm to their financial credit.[1] Foreclosures subsequently occurred on March 28, 1974, at which time defendant purchased the properties.

The plaintiff and Louis Cedrone filed a second complaint on May 24, 1974, requesting the court to set aside defendant's foreclosures on the Cumberland properties. They also requested that there be an accounting with respect to the foreclosures, that defendant be restrained from transferring the land, and that they be compensated for lost profits.

The two cases were tried together before a Superior Court judge sitting without a jury. On December 10, 1980, the trial justice issued a written decision that denied and dismissed both complaints.[2] In the decision he noted that the complaint requesting injunctive relief was moot because the foreclosures on the Cumberland properties had already occurred. The trial justice also granted two counterclaims brought against plaintiff, one in the amount of $19,870.31,[3] plus interest and costs and the other in the amount of $230,141.22, plus interest and costs.[4] The plaintiff now appeals only from that portion of the trial justice's decision that upheld the foreclosures on the Cumberland properties.

■ The plaintiff's principal contention is that defendant improperly foreclosed on

1. At the trial level, Louis Cedrone and his wife, Gloria, were coplaintiffs but neither appealed to this court. There was also land involved located in Providence, North Providence, and Johnston, but plaintiff appeals only that portion of the Superior Court's decision that concerned the Cumberland properties.

2. The death of Louis Cedrone was noted on the record on August 27, 1980, and his administratrix was substituted as a party plaintiff.

3. This sum represents the balance due on the note and mortgage of plaintiff's North Providence property.

4. The plaintiff and the estate of Louis Cedrone were found jointly and severally liable for this amount, which represents funds belonging to defendant that were wrongfully paid to plaintiff and Cedrone by an employee of defendant.

the Cumberland properties. In support of this contention, plaintiff first argues that the difference between defendant's bid price at the foreclosure sale and the properties' value "shocks the conscience."

We have held that if the disparity in price shocks the conscience, we shall take such disparity into account, along "with the other *attendant circumstances* in ascertaining whether the sale was fair or whether instead it was so unjust and inequitable as to justify its being set aside." (Emphasis added.) *Anderson v. Anderson,* 107 R.I. 202, 206, 266 A.2d 56, 59 (1970); *see Hanley v. Brayton,* 66 R.I. 87, 92, 17 A.2d 857, 859 (1941). The plaintiff claims that the properties were sold for $55,000 when they in fact had a combined value of approximately $1,000,000. Assuming that these amounts are correct, one's conscience might be shocked were there no attendant circumstances to consider. However, we have in the present case a crucial attendant circumstance,—the fact that defendant purchased the property. In such a case, defendant, as purchasing mortgagee, should not have the whole estate and the whole debt. *Woolley v. Tougas,* 61 R.I. 434, 438, 1 A.2d 92, 93–94 (1938). *See also, Island Savings Bank v. Galvin,* 20 R.I. 158, 158, 37 A. 809, 809–10 (1897) (mortgagee, who permits property to be sacrificed at foreclosure sale in order that a representative of the mortgagee could purchase the property for less than market value, is equitably estopped from prosecuting a suit to recover deficiency). In the present case, defendant has not sought a deficiency judgment. In fact, even if defendant were to attempt to obtain such a judgment, the authority cited would preclude any chance of success. Therefore, we conclude that the purchase price does not "shock the conscience." As defendant points out in its brief, the actual price paid was the amount due on the Cumberland properties, which according to the trial justice's findings of fact was $501,399.68.

The Cumberland properties were appraised at approximately $900,000, an amount well in excess of the $501,399.68 owed to defendant by plaintiff. However, as we mention above, we shall not set aside defendant's sale to itself unless we find some attendant circumstance which, coupled with the price disparity, indicates that the sale was unjust, unfair, or inequitable. The plaintiff claims that two examples of such attendant circumstances exist in the present case.

■ First, he alleges that an attorney for defendant "chilled" the bidding at the foreclosure sale when he responded to a question by informing those present that there were other mortgages on the properties. The plaintiff contends that such a response might lead a prospective purchaser to believe he was second, third, or fourth in the line of mortgages with several mortgages or attachments ahead of the mortgage being foreclosed. However, we do not find the response to have the chilling effect suggested. Certainly a prospective purchaser who inquires about the existence of other mortgages could just as easily inquire about the status of those mortgages.

■ The plaintiff also contends that the sale should be set aside because defendant failed to give adequate notice to the Internal Revenue Service (IRS) of the foreclosure sale.[5] The plaintiff further avers that by not notifying the IRS before the sale, defendant precluded the service from exercising its right of redemption. Without reaching the merits of plaintiff's contention that notice to the IRS was inadequate, we decide that plaintiff has no standing to assert such a claim. We recently reiterated the well-settled rule that one who seeks review in an appellate court must establish affirmatively that he is sufficiently aggrieved in order to acquire standing. *Newport Electric Corp. v. Public Utilities Commission,* R.I., 454 A.2d 1224, 1225 (1983). A person is so aggrieved by a judgment or order when such judgment or order results in injury in fact, economic or otherwise. *Id.*

---

5. The IRS had a tax lien on the properties.

In its brief and at oral argument, plaintiff has been unable to show any injury in fact or economic loss resulting from the IRS not exercising its right of redemption. The plaintiff is no longer liable for any back taxes on the property because defendant has paid them. Assuming the IRS did receive adequate notice and did choose to exercise its right of redemption, plaintiff would be in no better situation than he is in now. The plaintiff owes no money for a deficiency presently and would owe no money for a deficiency to defendant or the IRS were the latter eventually to sell the properties for a higher price. What plaintiff appears to be referring to is a possible right he may have to any excess obtained from a higher price. Assuming arguendo that he has such a right, we still do not believe that he has been injured, economically or otherwise. First of all, the right does not exist unless a sale is made that results in an excess. Second, a sale by the IRS will not occur unless the service decides to exercise its right of redemption. In the present case the IRS decided to accept payment for the back taxes rather than exercise its right of redemption. As a result plaintiff's alleged right in a possible excess never came into existence. Essentially, plaintiff is asking us to order a second foreclosure sale so that he be given the unlikely opportunity [6] to make a profit from the foreclosure on his properties.

 The final contention plaintiff makes is that the power of attorney to release dower given to him by his wife is invalid. Again we find that plaintiff has no standing to bring this claim because he has suffered no injury, economic or otherwise. *Newport Electric Corp.*, R.I., 454 A.2d at 1225. If a right of dower existed in the Cumberland properties, it was a right belonging to plaintiff's wife, Roseann Guiliano, and not to plaintiff. However, the record indicates that the Cumberland properties were owned by plaintiff and Louis Cedrone as partners, in which case such property would not be subject to a wife's dower interest. General Laws 1956 (1969 Reenactment) § 7–12–36(2)(e) provides that "[a] partner's right in specific partnership property is not subject to dower, curtesy, or allowances to widows, heirs, or next of kin." For either of the preceding reasons, we decide that plaintiff's contention concerning his wife's dower interest is without merit.

 This court will not disturb the findings of a trial justice sitting in equity unless they are clearly wrong or the trial justice misconceived or overlooked material evidence. *The Rake v. Gorodetsky*, R.I., 452 A.2d 1144, 1149 (1982). In the present case we are of the opinion that the trial justice was not clearly wrong, nor did he overlook material evidence in deciding that the foreclosures by the defendant were valid and legally carried out.

For the reasons stated above, the plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.

SHEA, J., did not participate.

---

**6.** We feel it is safe to assume that the IRS would again opt to receive payment for the back taxes rather than redeem the properties and later sell them.