**RHODE ISLAND CENTRAL
CREDIT UNION,**

v.

**Robert J. PAZIENZA and Mary
Ann Pazienza.**

**No. 89–98–M.P.**

Supreme Court of Rhode Island.

April 11, 1990.

George Salem, Coffey & Martinelli, Ltd., Providence, for petitioner.

Milan Azar, Warwick, Anthony J. Gianfrancesco, Baluch, Mahoney & Gianfrancesco, Providence, Alfred Factor, Kirshenbaum & Kirshenbaum, Cranston, for respondents.

OPINION

KELLEHER, Justice.

We have issued our common-law writ of certiorari to review certain actions taken

by a Family Court justice in the above-entitled proceeding. The petitioner, Rhode Island Central Credit Union (RICCU), is the mortgagee of a parcel of real estate situated in the town of North Providence at 75 Hawthorne Street. The parcel served as the marital domicile for Robert and Mary Ann Pazienza prior to their divorce. In accordance with a May 27, 1987 consent decree, Mary Ann acquired full title to the North Providence parcel. Robert, the original mortgagor, agreed to discharge immediately the outstanding balance due RICCU with the exception of $10,000. He also expressed a willingness to continue to be responsible for the remaining $10,000 balance. Robert failed, however, to reduce the balance, and as a result the mortgage has been in default since December 1987.[1]

In the early spring of 1988 RICCU initiated foreclosure proceedings. Mary Ann sought a temporary restraining order in the Family Court. The trial justice issued an ex parte order enjoining the foreclosure for thirty days, and that order has been extended continually since that date.

It appears that sometime in June 1989 the outstanding balance on the mortgage was almost $59,000, and almost $12,000 was owed for unpaid interest, principal, and late charges.

At issue before us is RICCU's contention that the Family Court does not have jurisdiction to affect the rights of third parties not involved with the controversy pending before the court. We believe otherwise.

The Family Court was created by the General Assembly at its January 1961 session with the passage of chapter 73 of the 1961 Public Laws. This legislation transferred the functions of the Juvenile Court and the domestic-relations jurisdiction of the Superior Court to a new entity called the Family Court. With the passage of time the purposes and responsibilities of the Family Court have continued to expand. Today these responsibilities can be found in G.L.1956 (1985 Reenactment) chapter 10 of title 8. Section 8–10–2 declares that chapter 8 "shall be liberally construed to the end that families whose unity or wellbeing is threatened shall be assisted and protected, and restored, if possible, as secure units of law-abiding members." Through the years the jurisdiction of the Family Court has consistently expanded. At its January 1972 session, the Legislature authorized the Family Court to consider controversies

"arising out of petitions and motions relative to real and personal property in the aid thereof, including, but not limited to, partitions, accountings, receiverships, sequestration of assets, resulting and constructive trusts, impressions of trust, and such other equitable matters arising out of the family relationship, wherein jurisdiction is acquired by the court by the filing of petitions for divorce, bed and board and separate maintenance." P.L.1972, ch. 31, § 1.

The 1972 amendment afforded the jurisdictional basis for the trial justice's actions in responding to RICCU's attempts at foreclosure. The trial justice's concern for the well-being of Mary Ann and her child is very commendable; however, he has apparently overlooked sentiments that were expressed by this court in *Anderson v. Anderson*, 107 R.I. 202, 205, 266 A.2d 56, 59 (1970), where the court noted that "it is a delicate matter to interfere with a sale when the mortgagee in foreclosing has acted within the letter of his power." The court went on to note that "a realistic awareness of what occurs in the marketplace suggests that land which is sold at auction under a power of sale will seldom produce a price as high as its real value." *Id.* at 205–06, 266 A.2d at 59.

At the beginning of the initial hearing on Mary Ann's motion to hold Robert in contempt, her attorney noted that he had "add-

---

1. The Pazienzas were married in March 1983. The husband filed for divorce in September 1984. Two months later they entered into a property-settlement agreement, and the divorce was granted on November 21, 1984. Robert has since remarried. In October 1988 he was declared bankrupt by the United States Court of Bankruptcy. Later, in March 1989, Robert was sentenced by a United States District Court judge for the District of Rhode Island to eighteen months in prison on five counts of wire fraud and credit-card fraud.

ed RICCU as a party/Defendant in these proceedings to prevent foreclosure; but, obviously, that is only a short term stay, since they are not a party to these proceedings. They have a valid, bona fide mortgage, and unless the mortgage is paid off, the mortgage will eventually be foreclosed and she'll then be out on the street with her eight-year-old child."

The trial justice obviously overlooked the "short stay" observation of Mary Ann's counsel as he continued to grant additional thirty-day stays of the foreclosure and considered testimony concerning Robert's contemptuous actions that was heard at different intervals during a one-year period. The repeated grant of thirty-day stays constitutes an abuse of the trial justice's discretion that requires us to sustain RICCU's appeal.

Rhode Island Central Credit Union's petition for certiorari is granted, and the record in the case is remanded to the Family Court for the sole purpose of affording Mary Ann a period of no more than ninety days during which she may, if she wish, redeem the property. If she should not do so then RICCU shall at long last have the opportunity to foreclose the mortgage in question.[2]

2. Rule 65(b) of the Family Court Rules of Procedure for Domestic Relations provides in pertinent part that every temporary restraining order granted without notice shall not exceed thirty days, unless consent has been given by the parties or good cause shown. The rule also provides that in cases wherein the temporary restraining order is granted without notice, a motion for preliminary injunction is to be set down for a hearing at the earliest possible time.